IN THE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DANIEL G. WRIGHT,<br>FLORIDA STATE PRISON WEST UNIT,<br>DOC# J33777,<br><br>      Petitioner,<br>v.<br><br>SECRETARY, DEPARTMENT OF<br>CORRECTIONS, STATE OF FLORIDA,<br><br>      Respondent. | Case No. |

**PETITION UNDER 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY PURSUANT TO A STATE COURT JUDGMENT**

1. Name and location of court which entered the judgment of conviction under attack: Florida Fourth Judicial Circuit Court, Nassau County, Florida

2. Date of judgment of conviction: February 22, 2016

3. Length of sentence: 20 years' imprisonment

4. Nature of offense involved (all counts): case 1- three counts of sexual battery, two counts of unlawful sexual activity, and one count of tampering with a witness; case 2- three counts of transmission of material harmful to minors and 31 counts of possession of photographs of sexual performance by child

5. What was your plea? Guilty

6. Kind of trial: N/A

7. Did you testify at the trial? N/A

8. Did you appeal from the judgment of conviction?

    Yes (✔)          No (__)

9.    If you did appeal, answer the following:

    (a)    Name of court: Florida First District Court of Appeal

    (b)    Result: Convictions and sentence affirmed. *See Wright v. State*, 228 So. 3d 561 (Fla. 1st DCA 2016)

    (c)    Date of result: July 27, 2017 (mandate issued August 18, 2017)

10.    Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

        Yes (✔)[1]        No (_)

11.    If your answer to 10 was "yes," give the following information:

    (a)    (1)    Name of court: Florida Fourth Judicial Circuit Court, Nassau County, Florida

        (2)    Nature of proceeding Florida Rule of Criminal Procedure 3.800(a) motion[2]

        (3)    Grounds raised: Illegal sentence

        (4)    Did you receive an evidentiary hearing on your petition, application or motion?  No

        (5)    Result: Motion granted in part and denied in part

        (6)    Date of result: February 21, 2019

        (7)    Did you appeal the result?  No

    (b)    (1)    Name of court: Florida Fourth Judicial Circuit Court, Nassau County, Florida

        (2)    Nature of proceeding Florida Rule of Criminal Procedure 3.850 motion[3]

        (3)    Grounds raised: Ineffective assistance of counsel

---

[1] Petitioner Wright has not previously challenged his convictions in federal court.

[2] Petitioner Wright's rule 3.800(a) motion was filed on October 24, 2018.

[3] Petitioner Wright's rule 3.850 motion was filed on March 4, 2019.

(4)    Did you receive an evidentiary hearing on your petition, application or motion? <u>No</u>

(5)    Result: <u>Motion denied</u>

(6)    Date of result: <u>May 20, 2019</u>

(7)    Did you appeal the result?  <u>Yes</u>

      i.    Date of result: <u>May 19, 2020 (mandate not yet issued)</u>

      ii.    Court: <u>Florida First District Court of Appeal</u>

      iii.    Result: <u>Denial of the motion affirmed</u>

(c)    Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1)    First petition, etc.  <u>No</u>

(2)    First petition, etc.  <u>Yes</u>

(d)    If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not: <u>An appeal was not necessary because the claim was raised in the subsequent rule 3.850 motion.</u>

12.    State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground.  If necessary, you may attach pages stating additional grounds and *facts* supporting same.

### A.  STATEMENT OF THE CASE AND STATEMENT OF THE FACTS

**1.**    **Statement of the Case**.

Daniel Gregory Wright was the Defendant in the state court proceedings in the State of Florida (Florida Fourth Judicial Circuit/Nassau County, case numbers 2014-CF-431 & 2014-CF-558).  Mr. Wright will be referred to as "Petitioner Wright" in this pleading.  The prosecution/State of Florida will be referred to as "the State."

In 2016, Daniel Gregory Wright (hereinafter "Petitioner Wright") was charged in case number 2014-CF-431 with three counts of sexual battery, two counts of unlawful sexual activity, and

one count of tampering with a witness – all related to a sexual relationship that Petitioner Wright had from August 2013 to May 2014 with M.W.,[4] a female seventeen-year-old senior who was one of his students at Fernandina Beach High School.  (R-48).[5]  In case number 2014-CF-558, Petitioner Wright was charged with three counts of transmission of material harmful to minors and with thirty-one counts of possession of photographs of sexual performance by child – all relating to photographs and videos exchanged from October 2012 to May 2013 between Petitioner Wright and H.W., a former student of Petitioner Wright's at Hilliard Middle-Senior High School who was seventeen years old at the time the photographs/videos were exchanged.  (R-49).

Petitioner Wright subsequently pled guilty to all counts – excluding the two counts of unlawful sexual activity in case number 2014-CF-431 due to double jeopardy issues – with the agreement that the state trial judge would have discretion to sentence him to between ten and twenty years in prison followed by an undetermined length of probation.  (R-108-111).  After conducting a sentencing hearing, the state trial judge sentenced Petitioner Wright to the maximum sentence of twenty years in prison followed by lifetime probation as a sexual predator.  (R-112-317).  On direct appeal, the Florida First District Court of Appeal affirmed the convictions and sentence.  *See Wright v. State*, 228 So. 3d 561 (Fla. 1st DCA 2017).

Thereafter, Petitioner Wright timely filed a state court motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  (R-48).  On May 20, 2019, the state postconviction court summarily denied Petitioner Wright's rule 3.850 motion.  (R-92).  On appeal,

---

[4] Only the initials of the alleged victims will be used in this petition.

[5] References to the state court postconviction record on appeal will be made by the designation "R" followed by the appropriate page number.

the Florida First District Court of Appeal *per curiam* affirmed[6] the denial of Petitioner Wright's rule 3.850 motion.

> **2.    Statement of the facts.**

Petitioner Wright, who completed his bachelor's degree in Marketing in 2004 and his Master's in Business Administration in 2009, taught at Hilliard Junior High School from 2007 to 2012, and at Fernandina Beach High School ("FBHS") from 2012 to 2014.  (R-53).  It was during his time teaching at FBHS that Petitioner Wright, who had no prior arrests of any kind, engaged in the activities that resulted in criminal charges being brought by the State.  (R-53).  During this time frame, Petitioner Wright was between the ages of thirty and thirty-two.  (R-53).

The allegations in this case initially came to the attention of law enforcement officials after rumors circulated around FBHS that Petitioner Wright and M.W. were involved in a sexual relationship during her senior year.  (R-53).  After both Petitioner Wright and M.W. denied these allegations, law enforcement officials closed the investigation.  (R-53).  However, after M.W. had turned eighteen and graduated from high school, Petitioner Wright's wife heard additional rumors, and she pressed the matter with the police.  (R-53).  Eventually M.W. and Petitioner Wright admitted that some sexual activity occurred prior to M.W.'s eighteenth birthday, although M.W.'s testimony fluctuated significantly in her multiple statements to law enforcement officials.  (R-53).

In the investigation of Petitioner Wright's involvement with M.W., the State searched Petitioner Wright's phone and computer and discovered photographs and videos that were later determined to depict H.W. in various positions of partial nudity, nudity, and engaging in various sexual acts alone and with another male.  (R-53).  The State also located videos that Petitioner

---

[6] The state appellate court did not issue a written opinion.

Wright sent to H.W. of himself masturbating on two separate dates.  (R-53).

Petitioner Wright pled guilty to the charges against him, with the understanding that the state trial court would hold a sentencing hearing and impose a prison sentence between ten and twenty years.  (R-54).  After holding a hearing, the state trial court imposed the following sentence:

- • twenty years in prison;
- • lifetime sex offender probation;
- • all standard conditions of sex offender probation indicated on the plea form;
- • mandatory eight hour curfew each day from 11:00 p.m. to 7:00 a.m. daily;
- • no access to the internet or social media;
- • no consumption of alcohol and two AA meetings per week; and
- • designation as a sexual predator.

(R-54).

## B.  STANDARD OF REVIEW

Petitioner Wright's request for federal habeas corpus relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (hereafter "AEDPA").  Given that the Florida appellate court affirmed the state postconviction court's decision without written explanation, this Court's review must "look through" the appellate court's decision to the reasoning employed by the state postconviction court when denying Petitioner Wright's state postconviction motion.  *See Wilson v. Sellers*, – U.S. –, –, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state court decision on the merits should "look through" that decision to the last related state court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning).

Under the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court clarified the nature of habeas review as set out in § 2254(d)(1). Writing for a majority of the Court, Justice O'Connor explained:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13.

As to findings of fact under 28 U.S.C. § 2254(d)(2), federal courts determine whether the state court's finding was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's determination of the facts shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See Hauser ex rel. Crawford v. Moore*, 223 F.3d 1316, 1323 (11th Cir. 2000). However, the statutory presumption of correctness applies only to findings of fact made by the state court, not mixed determinations of law and fact. *See Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001); *McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994).

In *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003), the Supreme Court stated:

> AEDPA does not require petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence. The clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court

determinations of factual issues, rather than decisions. Subsection (d)(2) contains the unreasonable requirement and applies to the granting of habeas relief . . . .

In other words, the "reasonableness" standard does not apply to determinations of factual issues. Petitioner Wright is not required to prove that the state court's factual findings were unreasonable, only that they were rebutted by clear and convincing evidence. "A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Id.* at 340.

In Petitioner Wright's case, the state courts' rulings resulted in an unreasonable application of Petitioner Wright's constitutional rights and clearly established federal law. Moreover, the state courts' rulings and orders were based on unreasonable determinations of the facts in light of the evidence presented in the state court proceedings.

### C.  ARGUMENT AND CITATIONS TO AUTHORITY

**Ground 1.     Defense counsel rendered ineffective assistance of counsel by failing to present evidence and argument at the sentencing hearing to rebut the prosecutor's material factual misrepresentation regarding the age of H.W. during the time frame when the photographs/videos were exchanged with Petitioner Wright.**

In his state postconviction motion, Petitioner Wright alleged that defense counsel was ineffective for failing to present evidence and argument at the sentencing hearing to rebut the prosecutor's material factual misrepresentation regarding the age of H.W. during the time frame when the photographs/videos were exchanged with him. As a result, Petitioner Wright was denied his right to effective assistance of counsel (in violation of the Sixth Amendment to the United States Constitution).

At the sentencing hearing, the prosecutor claimed that H.W. was fourteen years old and an eighth grader in Petitioner Wright's class when Petitioner Wright sent videos of himself

masturbating to H.W. The prosecutor argued that this was evidence that Petitioner Wright – despite having been cleared by two psychosexual evaluations during the pendency of the case – had pedophilic urges and interests. Contrary to the State's argument during the sentencing hearing, the videos were *not* sent when H.W. was in eighth grade; rather, the date/time stamp on the videos – as testified to by the State's IT expert at the *Williams*[7] rule hearing – shows that the videos were sent *after* Petitioner Wright had left Hilliard High School to start a new job in Fernandina Beach, and less than four months before H.W.'s *eighteenth* birthday. However, Petitioner Wright's counsel at the sentencing hearing, who had appeared on the case shortly before Petitioner Wright entered the plea, was unfamiliar with the material facts of this case and therefore he failed object to the prosecutor's misrepresentation regarding the age of H.W. when the videos were sent.

Prior to the sentencing hearing, the primary adversarial proceeding in this case was the *Williams* rule hearing that took place in July 2015, which resulted in the state trial court ruling that the evidence regarding H.W. could be used against Petitioner Wright in the trial regarding M.W. (which the State had announced it would try first). At the *Williams* rule hearing, the State's expert addressed the three videos depicting Petitioner Wright masturbating that Petitioner Wright sent to H.W. The expert acknowledged that these videos were created on two separate dates – the first in April of 2013 and the second in May of 2013. (R-57). This testimony conclusively established that the videos were sent to H.W. no earlier than April of 2013, when (1) Petitioner Wright had already commenced teaching at Fernandina Beach High School[8] and (2) just months before H.W.'s

---

[7] *Williams v. State*, 110 So. 2d 654 (Fla. 1959).

[8] Petitioner Wright began working at Fernandina Beach High School in August of 2012. (R-57).

eighteenth birthday.  As to the photographs and videos that H.W. sent to Petitioner Wright, the information and statement of particulars establish that the earliest of those photographs/videos were date stamped in October of 2012 – also after Petitioner Wright had begun teaching at Fernandina Beach High School and after H.W. turned seventeen.

In H.W.'s testimony at the *Williams* rule hearing, she stated that Petitioner Wright was her teacher at Hilliard High School from eighth grade through tenth grade.  (R-57).  H.W. testified that during some of that time period, she communicated through text messages with Petitioner Wright. (R-57).  During the *Williams* rule hearing, the State submitted a cell phone log showing dates on which text messages where exchanged between Petitioner Wright and H.W., starting in her eighth grade year (2010), but the logs did not contain the actual texts of the communications for the period when Petitioner Wright was a teacher at Hilliard High School.  (R-57).  H.W. testified that Petitioner Wright left Hilliard High School to teach at Fernandina Beach High School after her tenth grade year.  (R-57-58).  H.W. testified that she and Petitioner Wright "continued[d] to communicate after [he] moved to [Fernandina Beach High School]," and that Petitioner Wright eventually requested that she send him photographs, first asking for a photo of her in a bra.  (R-58).  The prosecutor asked H.W. if she recalled how old she was when Petitioner Wright first asked her for a photograph, and she responded, "No."  (R-58).  The prosecutor then pressed the issue, asking her if she recalled "about" how old she was, and, over an objection of speculation, H.W. was permitted to amend her answer to age fifteen.  (R-58).  The State then showed H.W. text messages between H.W. and Petitioner Wright between January of 2013 and June of 2013 that were sexually explicit, and the State submitted the text messages into evidence.  (R-58).  H.W. testified that her mom had seen the number of text messages between H.W. and Petitioner Wright in phone records and "freaked out." (R-58).  The text message that H.W. sent Petitioner Wright to say that her mom was making her stop

talking with Petitioner Wright was sent on July 22, 2013.  (R-58).  On cross-examination, the defense attorney clarified that H.W. did not actually recall if Petitioner Wright was her teacher or not at the time she sent him the photographs/videos.  (R-58).  H.W. testified that she asked Petitioner Wright to send her videos of him masturbating.  (R-58).  However, H.W. was clear that Petitioner Wright never kissed or touched her in any way.  (R-58).

Thus, it was clearly established during the *Williams* rule hearing that – despite prior statements of H.W. to the police and/or prosecutor – the entirety of the evidence possessed by the State against Petitioner Wright was exchanged between Petitioner Wright and H.W. *after* H.W. had turned seventeen and *after* Petitioner Wright had left Hilliard High School and begun teaching in Fernandina Beach.  Further, both the prosecutor and defense attorney addressed in argument the date/time stamps of the photographs and videos and argued about H.W.'s equivocal and uncertain testimony regarding the timing of any of the exchanges.  Most significantly, the precise dates were established when Petitioner Wright created/sent the videos of himself to H.W.:  April 26, 2013, and May 25, 2013.  (R-59).

Nevertheless, several months later at the sentencing hearing, with brand new counsel on board who was insufficiently familiar with the case,[9] the prosecutor blatantly misrepresented H.W.'s age in the argument to the court when seeking the maximum sentence of twenty years under the plea bargain: "[Petitioner Wright] is someone who, in their core, doesn't know that it's wrong to engage in sending masturbatory videos to a student, beginning at the age of 14."  (R-399).  The prosecutor

---

[9] Prior defense counsel and the prosecutor had developed an unusually strong adversarial relationship, and Mark O'Mara was hired as counsel to take the case to trial, but he instead convinced Petitioner Wright to enter a plea.  (R-59).

used this drastic misrepresentation to assert that Petitioner Wright was a pedophile from whom

society needed to be protected:

> And I'm sure that the Court is aware of this, but I would be remiss if I didn't mention that the psychological definition of pedophile is different than the criminal one.  Psychologically, because the victims were postpubescent, he's not a pedophile, but that's not our legal definition. Our legal definition is these victims were minors. He was in a custodial position.  *With H. W., she was 14, 15, 16.  And so criminally and in our society he is a pedophile.*

(R-421) (emphasis added).

For counsel to have remained silent and to have failed to contest or rebut that

misrepresentation reflects a lack of knowledge of the case that falls far below the standard of legal

representation guaranteed under the Sixth Amendment.  No strategic reason could be asserted for

failing to correct this misrepresentation, and Petitioner Wright was denied an adversarial challenge

to the State's misconduct because of counsel's inadequate preparation and study of the material facts

of the case.

In its order denying this claim, the state postconviction court referred to its reasoning for

denying Ground 2 (set forth below) of Petitioner Wright's rule 3.850 motion and stated that "it is not

at all clear that the prosecutor's remarks were improper when viewed in the full context of

Defendant's case" and that "[i]n the absence of such impropriety, defense counsel had no basis to

object in the manner Defendant now advocates." (R-94).  In its order denying Ground 2 of Petitioner

Wright's rule 3.850 motion, the state postconviction court stated that the prosecutor's comments

were "a fair comment on the record."  (R-96-98).  Contrary to the state postconviction court's

reasoning, the prosecutor's remarks were, in fact, improper.  As explained above, it was clearly

established during the *Williams* rule hearing that the entirety of the evidence possessed by the State

against Petitioner Wright was exchanged between Petitioner Wright and H.W. *after* H.W. had turned

seventeen and *after* Petitioner Wright had left Hilliard High School and begun teaching in Fernandina Beach.

Additionally, contrary to the state postconviction court's reasoning, Petitioner Wright was prejudiced by the prosecutor's false statement.  Because of the prosecutor's unrebutted factual misrepresentation, the state trial court was left with the false representation that Petitioner Wright began sending videos of himself masturbating to a fourteen-year-old girl in his eighth grade classroom, and that the abuse continued throughout her eighth, ninth, and tenth grade years, while Petitioner Wright was her teacher and she sat in his classroom every day.  While the fact that Petitioner Wright received and exchanged sexually explicit photos/videos with a seventeen-year-old former student from the school he used to work is reprehensible, sending videos of himself masturbating to a fourteen-year-old in his own eighth grade classroom would be far more culpable and manipulative conduct – but that is exactly what the prosecutor led the state trial judge to believe.

And as to public safety and to rehabilitation, given the state trial court's refusal to factor in mitigating details regarding the crime with H.W. (discussed more in Ground 3 below), the prosecutor was able to assert that Petitioner Wright was a pedophile:

> And I'm sure that the Court is aware of this, but I would be remiss if I didn't mention that the psychological definition of pedophile is different than the criminal one.  Psychologically, because the victims were postpubescent, he's not a pedophile, but that's not our legal definition.  Our legal definition is these victims were minors.  He was in a custodial position.  *With H.W., she was 14, 15, 16. And so criminally and in our society he is a pedophile.*
>
> . . . As far as help Daniel, Daniel needs to help himself, which he has not done, and to argue to the Court that he's learned his lesson because he hasn't gotten in any trouble in almost a year in the jail, well, *his thing is minor girls*.  He's not having access to minor girls.  It took several contempt orders and solitary confinement to stop him from accessing the minor girls.

(R-421) (emphasis added).  The state trial court clearly accepted this argument.  In rejecting the idea

that Petitioner Wright's behavior with M.W. was driven by him being a "lovesick fool," the state

trial court stated:

> …but the reality of an additional case involving an additional student, who is substantially younger than M.W., at 14, 15 and on years of age, involving the Hilliard victim, and what must be considered by the Court because now there is no longer an isolated occurrence, but now there is a pattern that persists.  It is a pattern born of utter depravity.

(R-432).  Thus, in trying to decide whether Petitioner Wright was capable of rehabilitation in the

future and becoming again a productive member of society, the mistaken assumption that Petitioner

Wright had in fact engaged in inappropriate sexual contact with H.W. starting at age fourteen led the

state trial court to misunderstand some of Petitioner Wright's responses during the prosecutor's

cross-examination.  During the sentencing hearing, Petitioner Wright acknowledged:

> . . . This is not me, this whole charade the past two years.  I apologize for wasting your time, and I apologize to the families.  And I exercised incredibly bad judgment . . . .
>
> . . . .
>
> Just like I said, I apologize to the victims, [M.W.], [H.W.] and their families. I just, I wish nothing but the best in the future and just happiness, and I'm just going to step back and I just want them to be – I just want them to know and their families to know I'm terribly and incredibly sorry for my actions and it was me and I'm sorry.

(R-360-361).  Despite these statements, the state trial judge nevertheless believed that Petitioner

Wright had not accepted responsibility for his actions because Petitioner Wright maintained that his

contact with H.W. in the eighth grade through the tenth grade was not inappropriate – an assertion

that is consistent with the actual evidence in this case.  (R-365: "Q: Are you saying there was nothing

inappropriate until H.W.?  [Petitioner Wright]: I'm saying that the time frame that you're speaking

of, as far as inappropriate behavior, is not accurate."); (R-435: "And the Court makes the

determination, if I am to believe you accepted responsibility, notwithstanding some of the testimony

you offered in that witness stand just beside me.").   The degree to which Petitioner Wright recognized the wrongfulness of his actions was a critical consideration in deciding Petitioner Wright's potential for further rehabilitation, but it seems likely that Petitioner Wright's testimony on this point was grossly misunderstood, which undeniably affected the state trial court's sentencing decision.

Had this material factual misrepresentation regarding H.W.'s age been corrected, then the state trial judge would likely have considered more seriously the evaluations of the two psychologists, rather than being as dismissive as he was.   (R-433: "And Mr. O'Mara I think rightly argues, well, as a defense lawyer would, that those reports made clear that you are not an ongoing danger to the community, and that's the conclusion of the report, and that may well be the conclusions of Dr. Drew and Dr. Neidigh, but your conduct in itself puts at risk future members and future children in this community or future adults in this community.").   The reports the state trial judge referred to were from two psychologists who evaluated Petitioner Wright for purposes of the custody determination related to his divorce proceedings.   Both of these psychologists found that Petitioner Wright had no pedophilic tendencies and would not be a danger to the community upon his release.   (R-63).   Dr. Neidigh, whose evaluation included conducting a polygraph report demonstrating that Petitioner Wright had had no sexual contact with any other minors in the past, made the following findings:

> The results of the current evaluation do not reflect any sexual interest in prepubescent teens or children.   It is clear that Mr. Wright is not a pedophile.   The psychosexual inventories did not contain any significant risk indicators for child molestation or sexual assault.   The available information suggests that Mr. Wright is a low risk to the community and is not in need of sexual offender registration to ensure community safety.   Likewise, the current data does not suggest the need for treatment for sexual

deviance, but does indicate that he is in need of psychosexual counseling focusing on his poor judgment and relapse prevention.

(R-63).  Had the state trial court not believed that Petitioner Wright had been sending nude videos to a fourteen-year-old in his classroom, these reports likely would have influenced his opinion regarding Petitioner Wright's lack of future danger and therefore influenced his judgment on what sentence was necessary and appropriate.

The material misrepresentation by the State on this point had a profound effect on the entire sentencing proceeding, as evidenced by the state trial court's explicit statements in explaining his rationale for the sentence chosen, and it is clear that confidence in the outcome of that proceeding is undermined.  Because there is a reasonable probability that Petitioner Wright would have received a lesser sentence than the absolute maximum that he received under the plea bargain – but for counsel's failure to challenge the prosecutor's misrepresentation – Petitioner Wright is entitled to a new sentencing hearing.

The Sixth Amendment right to counsel implicitly includes the right to the effective assistance of counsel.  *See McMann v. Richardson,* 397 U.S. 759, 771 (1970); *Chatom v. White,* 858 F.2d 1479, 1484 (11th Cir. 1988).  "The test to be applied by the trial court when evaluating an ineffectiveness claim is two-pronged:  The defendant must show both that trial counsel's performance was deficient and that the defendant was prejudiced by the deficiency."  *Bruno v. State*, 807 So. 2d 55, 61 (Fla. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Based on the record in this case, Petitioner Wright satisfies both prongs of the *Strickland* standard.  Defense counsel was ineffective for failing to present evidence and argument at the sentencing hearing to rebut the prosecutor's material factual misrepresentation regarding the age of H.W. during the time frame when the photographs/videos were exchanged with Petitioner Wright.

Absent counsel's ineffectiveness in the instant case, the result of the sentencing hearing would have been different. The state courts' rulings in this case were contrary to and an unreasonable application of *Strickland* and Petitioner Wright's Sixth Amendment right to the effective assistance of counsel. Additionally, the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record.

Petitioner Wright requests a hearing on this claim. In the context of a federal habeas petition filed pursuant to 28 U.S.C. § 2254(d)(2), federal courts determine whether the state court's finding was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." A state court's determination of the facts shall be "presumed to be correct" and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See Hauser ex rel. Crawford v. Moore*, 223 F.3d 1316, 1323, (11th Cir. 2000). However, the statutory presumption of correctness applies only to findings of fact made by the state court, not mixed determinations of law and fact. *See Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001); *McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994). More importantly, the presumption of correctness is only applicable for state court findings made after a "full and fair" hearing – a hearing on the merits with both parties present and the findings reduced to writing. *See Alston v. Redman*, 34 F.3d 1237 (3d Cir. 1994).

Petitioner Wright has not received a full, fair, or adequate hearing to resolve his claim– in fact, he has not been afforded *any* hearing. Petitioner Wright is therefore entitled to an evidentiary hearing on his claim.[10]

---

[10] 28 U.S.C. § 2254 states that "a determination of a factual issue made by a State court shall be presumed to be correct" and that "the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." However, in *Miller v. Champion*,

28 U.S.C. § 2254 states the following regarding the power of federal courts to order evidentiary hearings in habeas cases:

> If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
> (A) the claim relies on
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. 2254(e)(2).

In *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002), the Eleventh Circuit discussed the standard for obtaining an evidentiary hearing:

> This provision places a fairly stringent limitation on the power of the federal courts to order evidentiary hearings in habeas cases. Indeed, if a petitioner fails to develop an adequate factual record in the state courts, an evidentiary hearing could only be ordered if one of the two narrow exceptions to the general rule prohibiting such hearings applied.
> However, the question of what exactly constitutes a "failure to develop" the factual basis for a claim in state court is one on which we have not spoken. The Supreme Court, however, has addressed this question in a recent opinion, and stated that a petitioner cannot be said to have "failed to develop" relevant facts if he diligently sought, but was denied, the opportunity to present evidence at each stage of his state proceedings. *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (*Williams I*). The Court noted that § 2254(e) requires habeas petitioners to be diligent in presenting the factual bases of their federal claims to state courts, and that a failure to do so will result in the denial of an evidentiary hearing in federal court (unless the statute's

---

161 F.3d 1249, 1254 (10th Cir. 1998), the Tenth Circuit stated that "this presumption of correctness does not apply. . . if the habeas petitioner did not receive a *full, fair and adequate* hearing in the state court proceeding on the matter sought to be raised in the habeas petition." (Emphasis added.) *See also Valdez v. Cockrell*, 288 U.S. 702, 703 (5th Cir. 2002) (Dennis, J., dissenting) (stating that the *Miller* court observed, in a post-AEDPA case, that the denial of a full and fair hearing in state court still renders inoperative the statutory presumption of correctness).

other stringent requirements are met).  *Id.* However, the Court also pointed out that:

> comity is not served by saying a prisoner "has failed to develop the factual basis of a claim" where he was unable to develop his claim in state court despite diligent effort.  In that circumstance, an evidentiary hearing is not barred by 2254(e)(2).

*Id.*

In the instant case, the record clearly indicates that Breedlove sought an evidentiary hearing on his Brady claim at every stage of his state proceedings.  The state courts denied him the opportunity to present evidence related to his Brady claim; therefore, he was prevented from developing a factual basis for his claim in state court.  In light of this fact, § 2254(3)(2) does not preclude an evidentiary hearing in Breedlove's case.

*Breedlove*, 279 F.3d at 959-60.  *See also Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998) ("We now join every other circuit that has confronted this question and hold that where, as here, a habeas petitioner has diligently sought to develop the factual basis underlying his habeas petition, but a state court has prevented him from doing so, § 2254(e)(2) does not apply.").

As in *Breedlove*, the state court denied Petitioner Wright the opportunity to present evidence related to his claim and therefore Petitioner Wright was prevented from developing a factual basis for his claim in state court.[11] Hence, Petitioner Wright is not precluded from an evidentiary hearing in this proceeding and the Court should grant him one.

---

[11] Undersigned counsel note that the judge who presided over Petitioner Wright's state postconviction motion was *not* the same judge who presided over the *Williams* rule hearing and imposed the sentence (i.e., the state postconviction court ruled on a cold record and no thus deference should be given to the judge's factual "findings" regarding the prosecutor's argument being "a fair comment on the record").  Without the opportunity to make any credibility determinations, the state postconviction court's analysis was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," and therefore "this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them." *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (*en banc*).

**Ground 2.     The prosecutor knowingly presented false argument on a material fact to the state trial court during the sentencing hearing.**

In his state postconviction motion, Petitioner Wright alleged the prosecutor knowingly presented false argument on a material fact to the state trial court during the sentencing hearing. As a result, Petitioner Wright's constitutional due process rights were violated.

The prohibition against a prosecutor knowingly presenting misleading testimony or argument to the court or jury is based upon the demands of due process under the Fourteenth Amendment to the United States Constitution. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."). The United States Supreme Court in *Giglio v. United States*, 405 U.S. 150 (1972), held that a prosecutor cannot knowingly use false testimony against a defendant. To establish a *Giglio* violation, a defendant must show the following: (1) the prosecutor presented false testimony and/or argument; (2) the prosecutor knew the testimony/argument was false; and (3) the false evidence/argument was material. *See Guzman v. State*, 941 So. 2d 1045, 1050 (Fla. 2006). Once the first two prongs are established, the State bears the burden of showing that the false evidence was immaterial by showing that its use was harmless beyond a reasonable doubt. *See id.* To do this, the State must show that "there is no reasonable possibility that the error contributed to the conviction" or to the sentence imposed. *Id.* (quoting *State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986)).

*Giglio* applies not only where the prosecutor knowingly presents false testimony but also where the prosecutor herself makes "explicit factual representations" to the court knowing that those representations were false. *See United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995). As set forth in Ground 1 above, the record unequivocally establishes the age of H.W. when Petitioner

Wright sent her masturbation videos, and when she sent him photographs/videos, and therefore the inaccuracy of the prosecutor's statement at sentencing is clear (i.e., the videos were *not* sent by Petitioner Wright when H.W. was in the eighth grade). This due process claim is not defeated by the fact that counsel should have known of the falsity of the prosecutor's argument. *See Johnson v. State*, 128 So. 3d 155, 157 (Fla. 2d DCA 2013) ("Here, while Johnson could have raised his *Giglio* claim on direct appeal, he did not. . . . Johnson's failure to raise this claim on direct appeal does not render it procedurally barred. And because the claim alleges a violation of Johnson's substantive due process rights that would otherwise be cognizable under rule 3.850(a)(1), the postconviction court should have considered the claim on its merits even though it was raised for a first time in Johnson's postconviction motion."). *See also United States v. Foster*, 874 F.2d 491, 495 (8th Cir. 1988); *State v. Yates*, 629 A.2d 807, 809-810 (N.H. 1993). The reason is simple: even if a defendant knows about or tries to counter a government-sponsored lie, "perjury pollutes a trial, making it hard for jurors to see the truth." *United States v. LaPage*, 231 F.3d 488, 492 (9th Cir. 2000). The government thus has an affirmative duty to avoid intentionally misleading the court regarding the facts. Shifting that burden to the defendant offends basic principles of due process.

As asserted above, the claim that Petitioner Wright sent videos of himself masturbating to H.W. when she was fourteen years old and a student in his class, as well as the date-range of H.W. sending photographs/videos to Petitioner Wright, was known to be false by the prosecutor – the same individual that conducted both the *Williams* rule hearing and the sentencing hearing. Although the prosecutor asserted at the *Williams* rule hearing that Petitioner Wright texted with H.W. starting in the eighth grade, the prosecutor admitted that she merely had logs of the dates that the text messages were sent between Petitioner Wright and H.W. during that time period – and that she had no idea what the subject matter of those text messages were or whether any photographs of any sort were

ever exchanged (other than the photographs and videos from 2012-2013 that Petitioner Wright had been charged with).   (R-68).   There is no evidence that H.W. was involved in any sexually inappropriate exchange while Petitioner Wright was still H.W.'s teacher, particularly in light of Petitioner Wright's unrebutted testimony that lots of his students had his cell phone number because of the need to contact him to check out equipment from his computer science classroom and in his coaching responsibilities.   (R-68).   Thus, the prosecutor knowingly misrepresented the facts to the state sentencing court, contrary to the high ethical calling of a state prosecutor.   As explained by the Florida Supreme Court in *Johnson v. State*, 44 So. 3d 51, 54 (Fla. 2010):

> This is not a case of overzealous advocacy, but rather a case of deliberately misleading the court. . . . The prosecutor's misconduct obfuscated the truth-seeking function of the court and compromised the integrity of the subsequent proceedings. . . . In our system of justice, ends do not justify means.   Rather, experience teaches that the means become the end and that irregular and untruthful arguments lead to unreliable results.   Lawlessness by a defendant never justifies lawless conduct at trial. *See, e.g., United States v. Bagley*, 473 U.S. 667 (1985); *Giglio; Napue v. Illinois*, 360 U.S. 264 (1959); *Guzman v. State*, 868 So. 2d 498 (Fla. 2003).

While a prosecutor "may strike hard blows, [s]he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935).

As outlined in Ground 1 above, the explicit argument from the State and explanation by the state trial court regarding its sentencing decision establish the extent to which the prosecutor's factual misrepresentation tainted the sentencing proceedings.   Further, the burden is more favorable to the defense in a *Giglio* claim than a *Strickland* claim, due to the existence of the prosecutorial misconduct.   *See Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1348 (11th Cir. 2011) ("For *Giglio* violations, the defendant is entitled to a new trial 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' [*United States v.] Agurs*, 427 U.S. [97,] 103 [] [(1976)]. 'The could have standard requires a new trial unless the prosecution persuades

the court that the false testimony was harmless beyond a reasonable doubt." *Smith [v. Sec'y]*, 572 F.3d [1327,] 1333-34 [(11th Cir. 2009)].  *Giglio*'s materiality standard is 'more defense-friendly' than *Brady*'s.  *Hammond v. Hall*, 586 F.3d 1289, 1306 n.4 (11th Cir. 2009).").  The burden here is upon the State to show that the error is harmless beyond a reasonable doubt, and that burden certainly cannot be carried here.

In its order denying this claim, the state postconviction court first concluded that *Giglio* does not apply to this case because the false assertion was made by the prosecutor rather than a witness:

> As a threshold matter, this Court notes that Giglio addresses false testimony, not allegedly false argument.

(R-94-95).  Contrary to the state postconviction court's conclusion, federal appellate courts have applied the *Giglio* standard to false statements made by prosecutors.  *See, e.g., United States v. Sutton*, 542 F.2d 1239, 1242 (4th Cir. 1976) ("We see no legal difference between the perjury of a witness in *Giglio* (denying he had been offered leniency) and the false statement of the prosecutor here."); *Hammond v. Hall*, 586 F.3d 1289, 1306-1307 (11th Cir. 2009) ("A *Giglio* claim involves an aggravated type of *Brady* violation in which the suppression of evidence enabled the prosecutor to put before the jury what he knew was false or misleading testimony, or allowed the prosecutor himself to make a false statement to the jury.") (citations omitted); *United States v. Oliveros*, 275 F.3d 1299, 1308 (11th Cir. 2001) ("*Giglio* involved a prosecutor who knowingly used perjured testimony or failed to correct testimony that was false.  In *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995), we applied *Giglio* to the situation *where the prosecutor himself made false factual representations* to the jury.") (emphasis added).

Next, the state postconviction court concluded that the prosecutor's comments during the sentencing hearing were "a fair comment on the record" (for the reasons quoted in Ground 1 above).

(R-96-98).   As explained in Ground 1, the prosecutor's misrepresentation infected the entire sentencing proceeding – i.e., (1) the state trial court's belief that Petitioner Wright had an attraction to prepubescent girls, (2) the state trial court's rejection of the two psychologists' findings, (3) the state trial court's opinion that Petitioner Wright had not accepted responsibility, and (4) the state trial court's belief regarding whether Petitioner Wright posed a future danger.   Thus, contrary to the state postconviction court's reasoning, Petitioner Wright was prejudiced by the prosecutor's false statement (and – as explained above – the State has not met *its Giglio burden* of persuading the Court that the false testimony was harmless beyond a reasonable doubt).

Thus, for all of the reasons set forth above, the prosecutor knowingly presented false argument on a material fact to the state trial court during the sentencing hearing.   Petitioner Wright is entitled to a new and fair sentencing hearing.

The state courts' rulings in this case were contrary to and an unreasonable application of *Giglio* and Petitioner Wright's Fourteenth Amendment due process rights.   Additionally, the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record.

Furthermore, the state court denied Petitioner Wright's *Giglio* claim without affording Petitioner Wright an evidentiary hearing.   For all of the reasons set forth in Ground 1 regarding the failure of a state court to conduct a "full and fair" hearing, Petitioner Wright submits that he is entitled to a hearing on this issue, as he has not previously been provided a "full and fair" hearing.

**Ground 3.     The state trial court erred in refusing to consider mitigation during the sentencing hearing.   Alternatively, defense counsel rendered ineffective assistance of counsel by failing to challenge the state trial court's perception that it could not consider the mitigation presented during the sentencing hearing due to the below-guidelines plea range.**

On direct appeal, Petitioner Wright alleged that the state trial court erred in refusing to

consider mitigation during the sentencing hearing because a sentencing range had been established by a negotiated plea, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. In his state postconviction motion, Petitioner Wright alleged that defense counsel failed to challenge the state trial court's perception that it could not consider the mitigation presented during the sentencing hearing due to the below-guidelines plea range. Both of these claims concerned statements that the state trial court made during the sentencing hearing that – due to the State entering a plea bargain that was below guidelines range set forth in the Criminal Punishment Code scoresheet – it (i.e., the state trial court) should not consider any mitigation, as the mitigation had already essentially been taken into consideration in arriving at the below-guidelines plea agreement.

During the sentencing hearing (R-402-419), Petitioner Wright's attorney – after addressing at length the history of Petitioner Wright's case and the extreme animosity that developed between the prosecutor and Petitioner Wright's former attorney – focused on the fact that both psychologists had found that Petitioner Wright had no pedophilic desires and that he was not a danger to the community. (R-414, 418-419). Petitioner Wright's attorney acknowledged that Petitioner Wright exercised "extraordinary immaturity" and bad judgment, but he argued that a ten-year prison sentence would be more than enough to satisfy the need for deterrence, justice, and punishment. (R-413-414). Petitioner Wright's attorney also argued that the concern for proportionality with sentencing in other similarly situated cases should dictate that a ten-year sentence was more than sufficient, and he emphasized the opportunities for rehabilitation through counseling while Petitioner Wright was serving that ten-year sentence in the Department of Corrections. (R-411-412, 415-416).

During defense counsel's argument, the state trial court interrupted counsel to pose a question, and the following exchange occurred:

> THE COURT:  Let me ask you a question.  You would agree the statutory exposure on the crimes charged is far in excess of 20 years?
>
> [DEFENSE COUNSEL]:  Absolutely.
>
> COURT:  And, in fact, the sentencing guidelines themselves, the minimum guideline is far in excess of 20 years?
>
> [DEFENSE COUNSEL]:  Absolutely.
>
> COURT:  My question to you is, the argument that you're presenting as to what we must weigh in the quantum of these cases we handle, and yet I want the record to be very clear, though certainly, quote, unquote, "these kinds of cases are handled," each case is individual, each case is enormous and has potential for harm, both past and reality – realized harm and potential for future harm, and certainly there is no mathematical equation that we all just plug into a computer somewhere and push out a piece of paper and move on to the next case.  This case, as in every case of this kind, is far too important.
>
> *My question to you is, to what extent are the factors you are presently arguing, a willing, quote, unquote, "victim" as it pertains to M.W. a lack of actual contact or acting out beyond transmission of photographs or to what extent that already factored into the range of sentence contemplated by the plea agreement of [10] to 20 years?*

(R-409-410).  Defense counsel began his response by noting that he presumed that the prosecutor did consider both the mitigation and aggravation in arriving at the sentencing range established in the plea bargain (R-410), but he never made a cogent argument as to why the state trial court should consider the mitigation as well.  After hearing the arguments, the state trial court took a recess before returning to the courtroom to pronounce sentence.  (R-422).  Upon returning to the courtroom, the state trial court proceeded to extensively articulate its rationale in its sentencing decision before pronouncing the sentence.  (R-423-440).  The state trial court explicitly stated that the fact that Petitioner Wright met both of these women in the context of a teacher-student relationship is the

most "heightened aggravating" circumstance in this case.  (R-426).  As to other aggravating

circumstances, the state trial court considered the desires of the parents of M.W. and H.W.  (R-429-

430); the effects of Petitioner Wright's conduct with M.W. and H.W. on their lives (R-430); and that

Petitioner Wright's conduct could not be solely categorized as a "lovesick fool" for M.W., given the

fact of his inappropriate conduct of a sexual nature with a different underage female.  (R-431-432).

After discussing the aggravating factors, the state trial court stated, "And then I have to consider the

mitigating factors, argued well by counsel."  (R-432).  The state trial court addressed the fact that

M.W. had been a willing participant and that she desired no further punishment for Petitioner Wright

(R-432-433), the letters presented on behalf of Petitioner Wright by those supporting him (R-431),

and the psychological reports of Dr. Neidigh and Dr. Drew and the polygraph that Petitioner Wright

had taken.  (R-433).  Immediately after noting what mitigation the defense had presented, the state

trial court turned back to the question that he had posed during the defense attorney's argument –

i.e., whether the state trial court could consider mitigation at all in this sentencing hearing, given that

the plea bargain range was below the guideline sentence:

> And then I asked your lawyer a question.  To what extent are those mitigating
> factors that you – that was argued already reflected in the plea agreement.  In other
> words, on the charges, serious as they are, Florida law provided sentencing guidelines
> to the courts that courts can depart from with statutory criteria being satisfied, but the
> sentencing guidelines were 58.29 years to life without parole.
>
> So the Florida Legislature has spoken very clearly, and this Court is duty
> bound by its oath to follow the declarations of the Florida Legislature as enacted by
> its laws.  And considering and balancing the mitigation, of what effect is that
> mitigation in light of the factors that the plea agreement already contemplates a
> sentence, the maximum of which is approximately one third of the minimum
> exposure of the sentencing guidelines should you have chosen to go to trial.
>
> Certainly some of that mitigation has to be factored in by the Court as already
> being provided for you and to you because of your willingness to tender a plea of
> guilty and accept responsibility.  And the Court makes the determination, if I am to

believe you accepted responsibility, notwithstanding some of the testimony you offered in that witness stand just beside me.

*And the Court must conclude on the facts and the evidence in this case that the mitigation offered by counsel has been factored in full in the plea agreement,* which leaves me and leaves this Court with, candidly, the heartbreaking testimony of a loving mom who looked me in the eye and made a statement that no parent would ever want to make, of asking the Court to have mercy on her son.  It is a tragedy that she is in that position.  It's a tragedy M.W. and the Hilliard victim have been placed in this position.  It is a tragedy that their families, who themselves continue to suffer consequence, emotional and otherwise, have been placed in this situation, but on the facts of this case the law requires meaningful, lasting consequence to your crime.

(R-434-436) (emphasis added).

It was a violation of Petitioner Wright's constitutional rights for the state trial court to refuse to consider mitigation during his sentencing hearing.  Moreover, had counsel properly objected and presented relevant legal argument to the state trial court  (i.e., that the plea agreement did not preclude the court from considering mitigation and, in fact, the state trial court was required by law to consider the mitigation presented during the sentencing hearing), there is a reasonable probability that the argument would have prompted the state trial court to change course, fully consider mitigation, and to sentence Petitioner Wright to something less than the absolute maximum sentence that it chose.  Petitioner Wright and the State reached a plea bargain that included a guarantee for what type of process Petitioner Wright would be afforded in the sentencing hearing.  Both the written and oral statements made about this plea deal left no room for doubt that the state trial court would be obligated to consider all mitigation presented by the defense and aggravation presented by the State prior to forming its decision about what sentence, within the prescribed range, would be appropriate.  The plea form explicitly stated that, prior to the state trial court deciding upon the length of sentence within the range prescribed by the plea agreement, "[a] hearing date will be set

at which time *mitigation evidence* may be presented."  (R-108) (emphasis added).  During the plea

colloquy, the state trial court further clarified: "And you understand, of course, nobody can make

such a promise to you and that determination [of the length of sentence] will be made by the Court

*after a proper sentencing hearing is afforded to you and all of the parties in this case,* do you

understand that?"  (R-615) (emphasis added).

Further, even without these explicit references to "mitigation evidence" and "a proper

sentencing hearing," it seems self-evident that, in a plea deal involving a range of years in which the

court could sentence a person, that the court would hear everything relevant to the crime and

mitigation in deciding what justice and fairness demanded in deciding what prison sentence would

be appropriate.  The state trial court's reasoning is a bit hard to follow as to why it was confused

about whether it could consider mitigation, in relation to the guideline range of 58.29 years to life

in prison.  It appears that the state trial court assumed that, since the sentencing range was below the

guideline range, the state trial court was "duty bound" to sentence Petitioner Wright to the maximum

of the sentencing range, given that it was the closest to the sentencing guideline that the Florida

Legislature had imposed:

> And then I asked your lawyer a question.  To what extent are those mitigating
> factors that you – that was argued already reflected in the plea agreement.  In other
> words, on the charges, serious as they are, Florida law provided sentencing guidelines
> to the courts that courts can depart from with statutory criteria being satisfied, but the
> sentencing guidelines were 58.29 years to life without parole.
> *So the Florida Legislature has spoken very clearly, and this Court is duty
> bound by its oath to follow the declarations of the Florida Legislature as enacted by
> its laws.*  And considering and balancing the mitigation, of what effect is that
> mitigation in light of the factors that the plea agreement already contemplates a
> sentence, the maximum of which is approximately one third of the minimum
> exposure of the sentencing guidelines should you have chosen to go to trial.

(R-434-435) (emphasis added).  The state trial court's concern was wholly unfounded.  The Florida

Rules of Criminal Procedure prescribe certain criteria which would eliminate the application of a

guideline sentencing range in a particular case, one of which occurred here:  a plea bargain reached

between the defense and the State.  *See* Fla. R. Crim. P. 3.992(b).  On the sentencing scoresheet, the

prosecutor marked "plea bargain" as the basis for departure.  (R-78).  Thus, in this case the state trial

court was relieved of its "duty" to follow the sentencing guideline range because the prosecutor

waived that statutory section by entering this plea bargain.  By virtue of the prosecution and defense

having entered into a plea bargain establishing a range of years in which Petitioner Wright could be

sentenced, the state trial court – when it accepted the plea – liberated itself from any duty to adhere

to the guidelines and established the opportunity to use its discretion, in light of all available

aggravation and mitigation, to craft a sentence within the range of years agreed upon in the plea deal.

In raising his concern over whether he could factor in the defense mitigation, the state trial

court made it very clear what it meant by the "mitigating factors":

1.  "[M.W.]'s preference as proffered by Mr. O'Mara this morning";
2.  "the large number of people of well respected members of this community who are here today to support you";
3.  "the letters that have been provided";
4.  "one of the students involved being a willing participant.  Her preference of no further punishment . . .";
5.  "the reports from the psychiatrist and psychologists, rather, and Dr. Neidigh and Dr. Drew and the supplements thereto and the polygraph examination," finding that Petitioner Wright was not a danger to the public; and
6.  that Petitioner Wright had hopes and dreams of getting out and making a productive life for himself on his family's property one day.

(R-430-434).  However, after referring to this "mitigation," the state trial court then returned to the

question that he posed to the defense attorney earlier: "To what extent are those 'mitigating factors'

that you – that was argued already reflected in the plea agreement?"  (R-434).  The state trial court

determined that the answer to that question was that the "mitigation" had already been "factored in

full in the plea agreement," so that "leaves me and leaves this Court, with, candidly, the

heartbreaking testimony of a loving mom who looked me in the eye" and asked me "to have mercy

on her son." (R-435). Thus, the state trial court struck every bit of mitigation presented by the defense as irrelevant to its sentencing decision, except for the mother's plea for mercy, and weighed that plea against all of the aggravating details presented by the State, and arrived at the maximum sentence allowable under the plea bargain of twenty years in prison. (R-435).

This was not an instance of the state trial court weighing evidence presented by the defense and deciding that the witnesses were not credible, or that the weight of the evidence was insignificant. *See, e.g., Branton v. State*, 187 So. 3d 382, 385 n.2 (Fla. 5th DCA 2016) ("For example, in the instant case, if the court had announced that it had weighed and considered the testimony from both Branton and the victim and concluded that a forty-year prison sentence remained the appropriate sentence, the present petition would be denied as meritless."). On the contrary, the state trial court noted and *"considered"* the mitigation and did not discount the credibility of any of the defense witnesses or proffer, and yet did not think that the evidence should be *factored* into his sentencing decision. *See e.g.*, (R-431: "I've reviewed the letters that have been provided. I've considered the testimony"). The state trial court considered the evidence, but then essentially excluded it, by believing that it was prohibited from factoring it into its sentencing decision. (R-434-435). The state trial court rejected the testimony because it "applied an incorrect standard in determining whether to exercise its discretion, violating [Petitioner Wright]'s right to due process," and "essentially negated [Petitioner Wright]'s ability to present any meaningful evidence prior to being" sentenced. *See Branton*, 187 So. 3d at 385. This belief was clearly erroneous and infected the entire sentencing decision, and it would have been avoided had Petitioner Wright's counsel made a clear objection and argument regarding why mitigation must still be considered. Petitioner Wright was thus prejudiced by his counsel's deficient representation in this regard, as there is a reasonable probability that it affected the outcome of his sentence.

In its order denying Petitioner Wright's ineffective assistance of counsel claim, the state postconviction court stated:

> Contrary to what Defendant argues in the instant motion, the sentencing court *did not refuse to consider Defendant's offered mitigation evidence.* The record cited above demonstrates that the sentencing court received and considered all the mitigation evidence Defendant presented.  In weighing the mitigation evidence against Defendant's offenses, the sentencing court *simply concluded that the mitigation evidence did not warrant a sentence at the lower end of Defendant's negotiated range.*

(R-99) (emphasis added).  The state postconviction court's reasoning is directly refuted by the state trial judge's own words at the conclusion of the sentencing hearing.  As explained above, just before announcing the sentence in this case, the state trial court said:

> . . .  To what extent are those mitigating factors that you – that was argued already reflected in the plea agreement[?] . . .
>
> . . . .
> And the Court must conclude on the facts and the evidence in this case that the mitigation offered by counsel has *been factored in full in the plea agreement* . . .

(R-434-435).  There is only one reasonable interpretation of the state trial court's words – the state trial court was stating that it would not consider the mitigation presented during the sentencing hearing because that mitigation had already been factored "in full" in the plea agreement.

Thus, for all of the reasons set forth above, the state trial court violated Petitioner Wright's constitutional rights by failing to consider mitigation during the sentencing hearing, and defense counsel was ineffective for failing to challenge the state trial court's perception that it could not consider the mitigation.  Petitioner Wright is entitled to a new sentencing hearing.

The state courts' rulings in this case were contrary to and an unreasonable application of (1) Petitioner Wright's constitutional due process rights and (2) *Strickland* and Petitioner Wright's Sixth Amendment right to the effective assistance of counsel.  Additionally, the state courts' rulings were

based on an unreasonable determination of the facts in light of the evidence contained in the state court record.

Furthermore, the state court denied Petitioner Wright's ineffective assistance of counsel claim without affording Petitioner Wright an evidentiary hearing. For all of the reasons set forth in Ground 1 regarding the failure of a state court to conduct a "full and fair" hearing, Petitioner Wright submits that he is entitled to a hearing on this issue, as he has not previously been provided a "full and fair" hearing.

**Ground 4.** **Defense counsel rendered ineffective assistance of counsel by not presenting expert testimony to challenge the *Williams* rule evidence relating to victim H.W., otherwise Petitioner Wright would not have entered this plea bargain range with the State and/or would have received a lesser sentence.**

In his state postconviction motion, Petitioner Wright alleged that defense counsel was ineffective for failing to present expert testimony to challenge the *Williams* rule evidence relating to victim H.W. Petitioner Wright explained that his attorneys hired an expert to evaluate the State's digital evidence against him, but the attorneys did not follow through with assuring that the expert could conduct a thorough and competent evaluation by litigating his access to the complete and unredacted files in this case. Had Petitioner Wright's attorneys appropriately done so, there is a reasonable probability that the outcome of the sentencing hearing would have been more favorable to Petitioner Wright. Furthermore, there is a reasonable probability that an efficient use of the digital forensic expert in this case would have caused a different outcome of the *Williams* rule hearing, which would have caused Petitioner Wright to refrain from entering into this draconian plea in the first place.[12] As a result, Petitioner Wright was denied his right to make a knowing, intelligent, and

---

[12] Petitioner Wright's plea range was ten to twenty years in prison, followed by an unlimited amount of sexual predator probation. For a comparison of similar cases from Northeast

voluntary decision regarding his no contest plea (in violation of the Fifth Amendment to the United States Constitution).[13]

The two-part *Strickland* test applies to challenges of guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Pursuant to *Hill*, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 57.

The failure to call an expert witness is a legal ground for a *Strickland* claim. *See Cowan v. State*, 250 So. 3d 870 (Fla. 5th DCA 2018). A strategic decision about whether an expert should be called cannot be made until a thorough investigation has been completed. *See, e.g., Jackson v. State*, 29 So. 3d 1161, 1162 (Fla. 1st DCA 2010) (a claim that counsel failed to investigate a mental health defense through expert examination is cognizable in a rule 3.850 motion.); *Richey v. Bradshaw*, 498 F.3d 344, 362 (6th Cir. 2007) ("[T]he mere hiring of an expert is meaningless if counsel does not

---

Florida involving a teacher having sexual conduct with a student, consider the following cases: *Stephen Turner*, a teacher at Fernandina Beach High School in Nassau County, was sentenced in 2010 to seven years in prison followed by five years of probation for having a sexual relationship with a student from the ages of fifteen-seventeen. http://jacksonville.com/community/my_nassau_sun/2009-10-29/story/fernandina_high_school_te acher_charged_with_sex_with_a_mino; *Dionne Younce*, a P.E. teacher at Nease High School in St. Johns County, was sentenced in 2016 to 364 days in jail, followed by five years probation for having sex with a seventeen-year-old student. http://www.news4jax.com/news/florida/st-johnscounty/ex-teacher-sentenced-to-sex-charges; *Corey French*, a teacher at Fletcher High School who had sexual intercourse with two different female students, sentenced in 2018 to three years in prison, followed by five years of sexual offender probation. https://www.actionnewsjax.com/news/local/jso-former-fletcher-high-school-teacher-arrested-for-alleged-sexual-relations-with-students/843084432/.

[13] *See Boykin v. Alabama*, 395 U.S. 238, 242-244 (1969) (recognizing that a defendant's decision to plead guilty/no contest involves the simultaneous waiver of several constitutional rights and, hence, waiver must be knowingly and voluntarily made by defendant).

consult with that expert to make an informed decision about whether a particular defense is viable."); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (the defense's "incomplete investigation was the result of inattention, not reasoned strategic judgment").

Further, prejudice can be found both as to defense counsel's performance at the sentencing hearing, as well as in Petitioner Wright's decision to enter into this plea in the first place. *See Mason v. State*, 742 So. 2d 370, 371-372 (Fla. 1st DCA 1999). As explained by the state appellate court in *Mason*:

> The two-part test established by *Strickland v. Washington*, 466 U.S. 668 (1984), applies to requests to withdraw pleas based upon allegations of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). However, in such cases, the "prejudice prong" of the *Strickland* test is satisfied by an allegation "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (footnote omitted). It is not necessary to allege, in addition, that a defense existed to the charge. This court has consistently adhered to such a test. *E.g., Regan v. State*, 730 So. 2d 828 (Fla. 1st DCA 1999); *Richardson v. State*, 677 So. 2d 43 (Fla. 1st DCA 1996); *McCoy v. State*, 598 So. 2d 169 (Fla. 1st DCA 1992). Appellant alleged that, but for the erroneous information received from his attorney, he would have proceeded to trial on the possession of cocaine charge, rather than plead no contest. We hold that this allegation was sufficient to satisfy the "prejudice prong" of the *Strickland* test and that, as a result, appellant's claim was facially sufficient.

*Id.* at 371-372. *See also Zanchez v. State*, 84 So. 3d 466, 468 (Fla. 2d DCA 2012) (holding that a general plea colloquy did not refute or address the specific issue of an alleged illegal search); *Jones v. State*, 846 So. 2d 1224, 1226 (Fla. 2d DCA 2003) (stating that a defendant's confirmation of satisfaction with counsel during a generalized plea colloquy was insufficient to refute a postconviction claim based on counsel's failure to advise of a specific defense); *Flowers v. State*, 793 So. 2d 36 (Fla. 2d DCA 2001) (the failure to file a motion to suppress is a legally sufficient claim that is not waived by entry of a plea).

On February 18, 2015, trial counsel filed a motion to allow the defense expert to examine evidence, in which counsel argued that he should be permitted to have his expert review the digital evidence in this case in order to secure a fair trial.  (R-84).  On April 21, 2015, the defense filed a motion for additional discovery, requesting the following information as to the child pornography charges:  the source or origin of each file, the method by which the file was obtained or downloaded, whether the particular file existed on more than one location (i.e., more than one cell phone, computer, hard drive, etc.), and the date the file was obtained by the State.  (R-84).  Although the defense had an IT expert, that expert communicated to defense counsel in mid-2015 that he could not be certain regarding his opinion on the individual counts of possession of child pornography because the State's information provided insufficient detail regarding which images/videos it was referring to, and the defense expert was only provided the metadata without the original images by the State.  The expert also informed defense counsel that he had been unable to determine any information regarding the transmission of the three video files by Petitioner Wright.  However, as far back as October 2014, the prosecutor stated in open court that she was willing to allow the defense attorney to bring his expert and the expert could have access to all of the digital evidence for review.  (R-84).  Indeed, having the defense expert examine the entirety of the digital files should have been an essential part of the pre-trial preparation, as the State's explanation for its need for an expert in a search warrant well illustrates:

> Based on Affiant's knowledge and training, analyzing cell phone devices for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. Such cell phone devices utilize a vast array of different operating systems, software, and set-ups. The variety of hardware and software available requires experts to specialize in some systems and applications. Scientific procedures are designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Since electronic evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"),

> a controlled environment is essential to its complete and accurate analysis. For the foregoing reasons, this search warrant will be executed in the State Attorney's Office in order to completely and accurately retrieve data maintained in the cell phone's hardware or software, to ensure accuracy and completeness of such data and to prevent the loss of the data either from accidental or intentional destruction.

(R-84-85). Nonetheless, the defense expert never conducted a full review of the State's digital evidence in this case, due to defense counsel's failure to follow through and arrange for that examination to take place, despite counsel's recognition of the importance of doing so – as evidenced by the above-referenced motions.

The failure of defense counsel, prior to proceeding to critical proceedings and/or entering a plea bargain, to have its expert complete that examination constitutes deficient performance of counsel. Had said examination been conducted, the expert would have provided definitive testimony on numerous critical questions for the defense: the precise date/time each photograph or video had been created, sent/received, and whether and when it had been deleted from the phone. Further, the expert would have confirmed that numerous innocent videos and photographs existed on Petitioner Wright's phone stretching back well before any of the pornographic images, thus corroborating the defense position that no pornographic images had ever been sent/received between Petitioner Wright and H.W. prior to Petitioner Wright moving to Fernandina Beach and H.W. turning seventeen.

This exculpatory and mitigating information could have been used by defense counsel not only to have argued for a lesser sentence within the established plea range, but they also could have used this to negotiate for a better deal with the State in first place. Further, this evidence would have weakened the State's argument that Petitioner Wright's contact with H.W. was sufficiently similar to his conduct with M.W. to justify its admission at the trial regarding M.W. While Petitioner Wright's contact with M.W. occurred while she was his student, establishing decisively that his conduct with H.W. occurred after he was no longer her teacher or seeing each other on a frequent

basis would have defeated the State's *Williams* rule argument that was already tenuous at best. Finally, had counsel used this exculpatory expert testimony in litigating the *Williams* rule motion, there is a reasonable probability that the outcome of that proceeding would have been different, and that Petitioner Wright would have rejected the State's plea bargain of ten-to-twenty years and taken the case with M.W. to trial.

In its order denying this claim, the state postconviction court stated that "the record demonstrates that Defendant's attorney rigorously cross-examined the State's investigator during the *Williams* rule hearing." (R-101). In *Leonard v. State*, 930 So. 2d 749, 751-752 (Fla. 2d DCA 2006), the state appellate court specifically rejected the reasoning employed by the postconviction court in the instant case:

> [T]he fact that Leonard was able to introduce some evidence in support of his theory of defense *does not negate his claim that his trial counsel was ineffective for failing to seek expert testimony that would have conclusively rebutted the State's theory.*

(Emphasis added). As in *Leonard*, in the instant case, "the fact that [defense counsel rigorously cross-examined the State's investigator] does not negate [Petitioner Wright's] claim that his trial counsel was ineffective for failing to seek expert testimony that would have conclusively rebutted the State's theory" that Petitioner Wright's contact with H.W. was sufficiently similar to his conduct with M.W. to justify its admission at the trial regarding M.W. (as explained above). *Id.*

Thus, for all of the reasons set forth above, defense counsel was ineffective for failing to present expert testimony to challenge the *Williams* rule evidence relating to victim H.W. Counsel's failure fell below the applicable standard of performance. Absent counsel's ineffectiveness in the instant case, the result of this case would have been different and/or counsel's ineffectiveness affected the fairness and reliability of the proceeding, thereby undermining any confidence in the

outcome.  Petitioner Wright should be permitted to withdraw his plea or, alternatively, should be afforded  a new sentencing hearing.

The state courts' rulings in this case were contrary to and an unreasonable application of *Strickland* and Petitioner Wright's Sixth Amendment right to the effective assistance of counsel. Additionally, the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record.

Furthermore, the state court denied Petitioner Wright's ineffective assistance of counsel claim without affording Petitioner Wright an evidentiary hearing.  For all of the reasons set forth in Ground 1 regarding the failure of a state court to conduct a "full and fair" hearing, Petitioner Wright submits that he is entitled to a hearing on this issue, as he has not previously been provided a "full and fair" hearing.

**Ground 5.     Cumulative error.**

In his state postconviction motion, Petitioner Wright raised a claim of cumulative error. Specifically, all of the errors committed by counsel in Petitioner Wright's case, considered either individually or together, resulted in Petitioner Wright being denied a fair proceeding.  "Where no single error or omission of counsel, standing alone, significantly impairs the defense, the district court may nonetheless find unfairness and thus, prejudice emanating from the totality of counsel's errors and omissions."  *Ewing v. Williams*, 596 F.2d 391, 396 (9th Cir. 1979).  *See also Cargle v. Mullin*, 317 F.3d 1196, 1206-1207 (10th Cir. 2003).

**Ground 6.     Multiple conditions of Petitioner Wright's probation are illegal as bearing no relationship to the crimes for which Petitioner Wright was convicted.**

In his state postconviction motion, Petitioner Wright argued that multiple conditions of his probation are illegal as bearing no relationship to the crimes for which he was convicted.  At age

thirty-four, Petitioner Wright was sentenced to lifetime probation (to commence following his prison sentence), including the following conditions with which he must comply for the rest of his life:

- mandatory curfew from 11:00 p.m. to 7:00 a.m. daily;
- maintain a driving log;
- must not access the internet or other computer services or social media; and
- must not consume alcohol and must attend two AA meetings a week.

(R-88). Prior to filing his rule 3.850 motion, Petitioner Wright first filed a Florida Rule of Criminal Procedure 3.800(a) motion alleging that these particular conditions were invalid and illegal – as they did not bear reasonable relevance to Petitioner Wright's rehabilitation for the crimes to which he pled guilty. (R-6). In its order on the rule 3.800(a) motion, the state postconviction court denied this ground, stating that "[w]hether the various conditions cited by Defendant are, or are not, reasonably related to the crimes charged in this case is not a matter that may be determined solely on the face of the record." (R-14). Accordingly, Petitioner Wright included this ground in his rule 3.850 motion that he filed shortly after the state postconviction court issued its order on the rule 3.800(a) motion – because rule 3.850 affords the evidentiary hearing which the state postconviction court asserted was necessary. But despite having stated in its rule 3.800(a) order that this claim could not be ruled upon on the face of the record, the state postconviction court nevertheless summarily denied this claim without an evidentiary hearing. (R-103-105).

A special condition of probation is invalid if it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." *Biller v. State*, 618 So. 2d 734, 734-735 (Fla. 1993) (quoting *Rodriguez v. State*, 378 So. 2d 7, 9 (Fla. 2d DCA 1979)). *See also Lizano v. State*, 239 So. 3d 714, 716 (Fla. 4th DCA 2018). In Petitioner Wright's case, the

conditions of probation imposed by the state trial court are improper based on the three-part *Biller* standard. The four conditions cited above were not related to the crimes for which Petitioner Wright was convicted, the conditions relate to conduct which is not criminal, and are not reasonably related to future criminality. *See, e.g., Richardson v. State*, 620 So. 2d 257 (Fla. 2d DCA 1993) (holding a condition on alcohol consumption was unrelated to a conviction for possession of cannabis with intent to sell); *Carty v. State*, 79 So. 3d 239, 240 (Fla. 1st DCA 2012) ("Appellant was convicted of resisting an officer without violence. He was sentenced to probation which included a special condition requiring him to complete a batterer's intervention program. Appellant contends that this condition is invalid because it is not reasonably related to his rehabilitation. We agree and reverse.").

In its order denying this claim, the state postconviction court said that it was denying this claim for three reasons: (1) three of the conditions – overnight curfew, driving log, and no internet access – are standard conditions of sex offender probation; (2) Petitioner Wright agreed to these conditions as part of his plea; and (3) the alcohol condition satisfies a *Biller* analysis. (R-140-105). None of these reasons are adequate to defeat Petitioner Wright's claim, and each are addressed in turn below.

As to the state postconviction court's suggestion that three of these grounds are standard statutory conditions of probation, the court was correct only on two of the conditions – the overnight curfew and the driving log. However, the fact that these two conditions are required under Florida's statute does not mean that they comply with the judicial review of relevancy to rehabilitation that *Biller* requires, and Petitioner Wright maintains that the conditions fail the *Biller* test – particularly in light of Petitioner Wright's probation being for the rest of his life. As to the condition forever forbidding Petitioner Wright from having access to the internet and social media, contrary to the state

postconviction court's assertion, this is not a standard condition of sex offender probation.  Rather, section 948.30(1)(h), Florida Statutes, permits internet access once a "safety plan" is approved.  In fact, as seen on the plea form signed by Petitioner Wright, the standard condition has been partially struck through with a pen and new language had been added.  (R-109).  Thus, in Petitioner Wright's case, Petitioner Wright is being deprived of all internet and social media access *for the rest of his life*.  This prohibition, in modern society, has profound social and professional implications for Petitioner Wright, as recognized by the United States Supreme Court in 2017 when striking down as a violation of the First Amendment North Carolina's statute criminalizing for sex offenders "access to a number of websites, including commonplace social media websites like Facebook and Twitter." *Packingham v. North Carolina*, – U.S. –, –, 137 S. Ct. 1730, 1737 (2017) ("By prohibiting sex offenders from using those websites, North Carolina with one broad stroke bars access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge.  These websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard.  They allow a person with an Internet connection to become a town crier with a voice that resonates farther than it could from any soapbox. In sum, to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights.  It is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences.  Even convicted criminals – and in some instances especially convicted criminals – might receive legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives.") (citation omitted).

In attempting to support its contention that this prohibition is legal, the state postconviction court cited to *Levandoski v. State*, 245 So. 3d 643 (Fla. 2018).  (R-104).  However, *Levandoski* hinged upon a question of procedural due process, i.e., whether the court's failure to orally pronounce the conditions (and failure to timely provide Levandoski with the written order which imposed the conditions) deprived Levandoski of fair notice of their existence.  On the contrary here, Petitioner Wright is attacking these conditions not on the basis of procedural due process (he does not contest that he was given proper notice of these conditions), but rather that they are contrary to Florida and federal constitutional law on substantive grounds. (R-87-88).  *Levandoski* did not contain any analysis of the substantive legality of the condition related to the internet (nor did it clarify exactly what the condition specified) – because that was not an issue raised in the appeal.  In contrast to *Levandoski*, Petitioner Wright's rule 3.850 claim rightly focused on *Biller*, and its reliance on *Rodriguez* as a seminal case on this issue.  In *Rodriguez*, a case involving aggravated child abuse, the court imposed probationary restrictions upon her right to get married or pregnant.  *See Rodriguez*, 378 So. 2d at 8.  Rodriguez argued that these conditions violated due process and equal protection, *see id.* at 8, n.1, and the state appellate court ultimately struck the conditions.  In reaching its conclusion, the appellate court cited *Russell v. State*, 342 So. 2d 96, 97 (Fla. 3d DCA 1977), which provided the following statement of the law:

> The trial court is vested with broad discretion in determining the conditions of probation; however, such discretion is not unbridled.  The purpose of probation is primarily to rehabilitate and not primarily to punish.  A condition of probation that is reasonably related to the crime for which the offender has been convicted and that is directed to a reasonable restraint of activity in order to diminish the inclination to commit similar crimes is proper and, therefore, is not an abuse of discretion.

(Citations omitted).  A proper application of *Biller*, *Rodriguez*, and *Russell* results in the conclusion that the three conditions at issue in this case (i.e., driving log, curfew, and internet prohibition) –

which are being imposed for the remainder of Petitioner Wright's life – are not sufficiently related to the rehabilitative aims of his probation and are, thus, over-broad, illegal, and unconstitutional restrictions upon him.

Regarding the state postconviction court's conclusion that Petitioner Wright's plea bargain defeats this claim, Petitioner Wright notes that the state postconviction court's order makes no reference to nor attempts to distinguish the caselaw cited in Petitioner Wright's rule 3.850 motion for the contrary legal conclusion. In the rule 3.850 motion (R-88-89), Petitioner Wright cited *Leavitt v. State*, 810 So. 2d 1032, 1032-1033 (Fla. 1st DCA 2002), where the state appellate court stated:

> The appellant challenges an order of the trial court summarily denying his motion to correct illegal sentence. The appellant alleged that he was convicted of a second-degree felony, and that his current sentence of 20 years total exceeds the statutory maximum for second-degree felonies, which is 15 years. The trial court denied the motion on the ground that the appellant agreed to a negotiated plea. However, a defendant cannot plead to an illegal sentence.

(Citations omitted). The court in *Leavitt* cited *Blanchette v. State*, 620 So. 2d 258, (Fla. 1st DCA 1993), in which the state appellate court struck as invalid the probationary condition of a work program fee as "an unauthorized double assessment" and rejected the State's argument that Blanchette's plea cured the illegality. *See Blanchette*, 620 So. 2d at 259-260 ("A court cannot impose an illegal sentence pursuant to a plea bargain, nor may a defendant agree to an illegal sentence as part of that bargain."). *See also Williams v. State*, 500 So. 2d 501 (Fla. 1986) (finding that defendant's plea bargain for an above-guidelines sentence was illegal, stating: "a defendant cannot by agreement confer on the court the authority to impose an illegal sentence"). Because the conditions at issue in this case are not reasonably related to the rehabilitation aim of probation, the conditions are illegal – and the conditions cannot be enforced against him despite the conditions being part of Petitioner Wright's plea.

Finally, regarding the state postconviction court's conclusion that the alcohol-related conditions satisfy *Biller*, the postconviction court's record citations for this proposition are scant: a text message that Petitioner Wright sent to his wife prior to his arrest and a brief answer that Petitioner Wright gave at the sentencing hearing. (R-105). To determine whether these conditions were reasonably related to Petitioner Wright's rehabilitation – which would not commence until after he served twenty years in prison – the state postconviction court should have first held an evidentiary hearing (as recognized in the rule 3.800(a) order).

The state courts' rulings in this case were contrary to and an unreasonable application of *Packingham* and Petitioner Wright's constitutional rights. Additionally, the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record.

Furthermore, the state court denied Petitioner Wright's claim without affording Petitioner Wright an evidentiary hearing (even though the rule 3.800(a) judge acknowledged that a hearing was necessary to resolve the claim). For all of the reasons set forth in Ground 1 regarding the failure of a state court to conduct a "full and fair" hearing, Petitioner Wright submits that he is entitled to a hearing on this issue, as he has not previously been provided a "full and fair" hearing.

13. If any of the grounds listed in 12 were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

   The grounds raised in this petition were properly presented in state court.

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

   Yes ( __ )    No ( ✔ )

15.     Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a)     At preliminary hearing: <u>N/A</u>

    (b)     At arraignment and plea: <u>Mark O'Mara, 221 NE Ivenhoe Boulevard, Suite 200, Orlando, Florida 32804</u>

    (c)     At trial: <u>N/A</u>

    (d)     At sentencing: <u>Mr. O'Mara; Teresa Sopp, 407 North Laura Street, Jacksonville, Florida 32202</u>

    (e)     On appeal: <u>undersigned counsel Hamrick</u>

    (f)     In any postconviction proceeding: <u>undersigned counsel Hamrick</u>

    (g)     On appeal from any adverse ruling in a post-conviction proceeding: <u>undersigned counsel</u>

16.     Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
        Yes ( ✓ )     No ( )

17.     Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
        Yes ( )     No ( ✓ )

18.     TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition: <u>Petitioner Wright's convictions and sentence became final on October 25, 2017 – when the ninety-day period for filing a petition for writ of certiorari in the Supreme Court. However, the one-year limitations period was tolled on October 24, 2018, when Petitioner Wright filed his Florida Rule of Criminal Procedure 3.800(a) motion. The limitations period was again tolled when Petitioner Wright filed his Florida Rule of Criminal Procedure 3.850 motion on March 4, 2019[14] – and the limitations period continued to be tolled until the date that this petition is being filed (i.e., this petition is being filed before the date of the state appellate court's mandate following the affirmance of the denial of the rule 3.850 motion). See Williams v. Sec'y, Fla. Dep't of Corr., 674 Fed.</u>

---

    [14] The rule 3.850 motion was filed before the rule 3.800(a) motion became final (i.e., the state court issued an order granting in part and denying in part the rule 3.800(a) motion on February 21, 2019, and that proceeding did not become final until the thirty-day time period to file a notice of appeal expired).

Appx. 975, 976 (11th Cir. Feb. 2, 2017) ("We calculate the one year limitations period under AEDPA using the anniversary method, where the limitations period expires on the one-year anniversary of the date the period begins to run.  *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008).  Fed. R. Civ. P. 6(a)(1) states that, when calculating a period of time that is stated in days or a longer unit of time, courts should exclude the day of the event that triggers the period.  *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) ("[D]irect review of Petitioner's conviction concluded on October 5, 1998. . . .  Petitioner had until Wednesday, October 6, 1999 to file this petition."); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (concluding that Washington's conviction became final on October 6, 1997, and he had until October 7, 1998 to file his § 2255 motion).

Wherefore, Petitioner Wright prays that the Court will grant him the relief to which he is entitled in this proceeding.

**Oath**

     I declare (or certify, verify, or state) under penalty or perjury that the foregoing is true and correct.  Executed on July 13, 2020:

<u>/s/ Joseph Hamrick and Michael Ufferman</u> on behalf of Daniel Wright

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing instrument has been furnished

to:

      Office of the Attorney General
      PL01, The Capitol
      Tallahassee, Florida 32399-1050
      Email: criminalappealsintake@myfloridalegal.com

by email delivery on July 13, 2020;

      Mark S. Inch, Secretary
      Florida Department of Corrections
      501 South Calhoun Street
      Tallahassee, Florida 32399-2500

by U.S. mail delivery on July 13, 2020.

      Respectfully submitted,

      /s/ Joseph Hamrick
      JOSEPH HAMRICK
      527 Peyton Street, Apartment #2
      Geneva, Illinois 60134
      (904) 310-7494
      FL Bar No. 47049
      Email: joseph.s.hamrick@gmail.com

      /s/ Michael Ufferman
      MICHAEL UFFERMAN
      Michael Ufferman Law Firm, P.A.
      2022-1 Raymond Diehl Road
      Tallahassee, Florida 32308
      (850) 386-2345/fax (850) 224-2340
      FL Bar No. 114227
      Email: ufferman@uffermanlaw.com

      Counsel for Petitioner **WRIGHT**