**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DANIEL G. WRIGHT,

                    Petitioner,

v.                                                              Case No. 3:20-cv-777-WWB-JBT

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

                    Respondents.
_____/

## ORDER

THIS CAUSE is before the Court on the Petition for Writ of Habeas Corpus ("**Petition**," Doc. 1) filed by Petitioner under 28 U.S.C. § 2254.  Respondents filed a Response to the Petition ("**Response**," Doc. 22) in compliance with this Court's instructions.  Petitioner filed a Reply (Doc. 28) to the Response.  For the following reasons, the Petition is denied.

I.      **PROCEDURAL HISTORY**

Petitioner was charged in a six-count amended information in case number 2014-CF-431 with the commission of various crimes.  (Doc. 22-1 at 91–92).  Petitioner was also charged in a thirty-four count second amended information in case number 2014-CF-558 with the commission of various crimes.[1]  (Doc. 22-1 at 166–72).  Petitioner entered a Plea of Guilty and Negotiated Sentence regarding both cases in which he agreed to enter a

_____

[1] These cases involved two minor victims.  The victim in case number 2014-CF-431 was identified as M.W., and the victim in case number 2014-CF-558 was identified as H.W.

plea of guilty to Counts One, Three, Five, and Six in case number 2014-CF-431 and a plea of guilty to all counts in case number 2014-CF-558.  (Doc. 22-2 at 593–96).

The trial court held a hearing on the plea and ultimately accepted it.  (*Id*. at 620). The trial court adjudicated Petitioner guilty of the crimes in both cases and sentenced him in case number 2014-CF-431 as follows:

> Counts One, Three, and Five (all these counts involved sexual battery): concurrent terms of twenty years' imprisonment, followed by sex offender probation for life on each count, to run concurrently with the sentence in case number 2014-CF-558.

> Count Six (tampering with evidence): five years' imprisonment, followed by sex offender probation for life, to run concurrently with the other counts in the case and concurrently with the sentence in case number 2014-CF-558.

(Doc. 22-1 at 433–57).  The trial court sentenced Petitioner in case number 2014-CF-558 as follows:

> Counts One, Two, and Three (all these counts involved transmission of material harmful to minors): concurrent terms of five years' imprisonment, followed by sex offender probation for life, to run concurrently with the sentence in case number 2014-CF-431.

> Counts Four through Thirty-Four (all these counts involved possession of materials depicting sexual conduct by a child): concurrent terms of fifteen years' imprisonment, followed by sex offender probation for life, to run concurrently with the sentence in case number 2014-CF-431.

(*Id*. at 459–639).  Florida's First District Court of Appeal ("**First DCA**") affirmed *per curiam*. (Doc. 22-2 at 577).

Petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800.  (*Id*. at 581–87).  The trial court granted the motion in part.  (*Id*. at 589– 91).  Specifically, the trial court directed the Clerk of the Court to enter an Amended Judgment and Sentence for Count Six in case number 2014-CF-431 eliminating the portion of the sentence placing Petitioner on sex offender probation for the remainder of

his life and to enter an Amended Judgment and Sentence for Counts One through Thirty-Four in case number 2014-CF-558, eliminating the portion of the sentence placing Petitioner on sex offender probation for the remainder of his life.  (*Id*. at 591).  In all other respects, the motion was denied.  The Clerk of the Court subsequently entered Amended Judgments and Sentences.  (*Id*. at 626–837).

Petitioner next filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which the trial court denied.  (Doc. 22-3 at 49–91, 93–107).  The First DCA affirmed *per curiam*.  (*Id*. at 745–46).

## II.   Legal Standards

### A.   Standard Of Review Under The Antiterrorism Effective Death Penalty Act ("AEDPA")

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A federal habeas court must identify the last state court decision, if any, that adjudicated the claim on the merits.  *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016).  Where the state court's adjudication on the merits is unaccompanied by an explanation, the habeas court should "look through" any

unexplained decision "to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds briefed or argued to the higher court or obvious in the record it reviewed.  *Id*. at 1192–93, 1195–96.

For claims adjudicated on the merits, "section 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001).  "For a state-court decision to be an 'unreasonable application' of Supreme Court precedent, it must be more than incorrect— it must be 'objectively unreasonable.'"  *Thomas v. Sec'y, Dep't of Corr.*, 770 F. App'x 533, 536 (11th Cir. 2019) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

Under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue

made by a state court is presumed correct, and the habeas petitioner must rebut the presumption of correctness by clear and convincing evidence.  *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

Where the state court applied the correct Supreme Court precedent, the federal court must consider whether the state court unreasonably applied that precedent or made an unreasonable determination of the facts.  *Whatley v. Warden*, 927 F.3d 1150, 1181 (11th Cir. 2019).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* at 1175 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  Federal courts may review a claim *de novo* only if the state court's decision was based on an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts.  *Id.*

**B.    Standard For Ineffective Assistance of Counsel**

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  For deficient performance, a petitioner must demonstrate that his counsel's representation "fell below an objective standard of reasonableness."  *Id*. at 688.  And for prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Padilla v. Kentucky*, 559 U.S. 356, 366 (quoting *Strickland*, 466 U.S. at 694).  In the context of a guilty plea, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59

(1985).  "Surmounting *Strickland*'s high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas."  *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (citations and quotations omitted).

III.   ANALYSIS[2]

    A.   **Claim One**

Petitioner argues that counsel was ineffective for "failing to present evidence and argument at the sentencing hearing to rebut the prosecutor's material factual misrepresentation regarding the age of H.W. during the time frame when the photographs/videos were exchanged with Petitioner Wright."  (Doc. 1 at 8).  According to Petitioner, at the sentencing hearing, the prosecutor claimed that the victim was fourteen years old and an eighth grader in Petitioner's class when Petitioner sent videos to the victim of him masturbating.[3]  (*Id.*).  However, Petitioner asserts that the videos were sent after he had left Hilliard High School and less than four months before the victim's eighteenth birthday.  (*Id*. at 9).

Petitioner claims that counsel was "unfamiliar with the material facts of this case and therefore he failed to object to the prosecutor's misrepresentation regarding the age of [the victim] when the videos were sent."  (*Id*.).  Petitioner argues "it was clearly established during the *Williams* rule hearing that the entirety of the evidence possessed by the State against Petitioner Wright was exchanged between Petitioner Wright and H.W. after H.W. had turned seventeen and after Petitioner Wright had left Hilliard High

---

[2] Any allegations not specifically addressed have been found to be without merit.

[3] Petitioner was a teacher at the school.

School and begun teaching in Fernandina Beach."[4]  (*Id*. at 12).  Petitioner contends that, because of the prosecutor's factual misrepresentation, the trial court "was left with the false representation that Petitioner Wright began sending videos of himself masturbating to a fourteen-year-old girl in his eighth grade classroom, and that the abuse continued throughout her eighth, ninth, and tenth grade years, while Petitioner Wright was her teacher and she sat in his classroom every day."  (*Id*.).

This claim was raised in Petitioner's Rule 3.850 motion.  The trial court found that "it is not clear that the prosecutor's remarks were improper when viewed in the full context of Defendant's case. In the absence of such impropriety, defense counsel had no basis to object in the manner Defendant now advocates."  (Doc. 22-3 at 95).  The trial court also found there was no prejudice.

The record reflects that, at the *Williams* hearing, H.W. testified that she was born on August 18, 1995, and she attended Hilliard Middle School and Hilliard High School. (Doc. 22-2 at 316–17).  When she was in tenth grade, Petitioner left her school and went to Fernandina Beach High School.  (*Id*. at 318–19).  She stated that she and Petitioner began "texting and messaging and calling each other" when she was fourteen.  (*Id*. at 318).  On cross-examination, she acknowledged that Petitioner began texting her in January 2013, which was when he was at Fernandina High School and no longer her teacher.  (*Id*. at 330).

Brian Barnhart, an investigator with the State Attorney's Office, testified that Petitioner sent H.W. three masturbation videos, which were found on Petitioner's

---

[4] *Williams v. State*, 110 So. 2d 654, 663 (Fla. 1959) (allowing for the admission of evidence of other crimes, wrongs, and acts, if it is relevant to and probative of a material issue, even if the evidence may reflect adversely upon the accused's character).

computer but had been backed up through his phone.  (*Id*. at 364–65).  Two videos were dated April 26, 2013, and one was dated May 25, 2013.  (*Id*. at 58).

During argument to the trial court, the prosecutor stated that the "the first text message was April 17th of 2010. She would have been 14."  (*Id*. at 377).  Petitioner's counsel argued that the State had introduced text messages from 2013, when the victim was no longer Petitioner's student.   (*Id*. a 379).   Petitioner's counsel countered the prosecutor's argument that there were text messages from 2010: "Just saying we have AT&T records from back in 2010 doesn't cut it, Judge. We have to know today exactly what it is, which records they plan to use, which text messages they plan to use."  (*Id*.).  The prosecutor responded that the State did not have the content of the older text messages, and Petitioner's counsel argued there was no way of knowing whether the earlier text messages were sexual in nature.  (*Id*. at 393, 396–400).  The trial court denied Petitioner's "ore tenus motion to exclude the *Williams* Rule evidence" and ruled that the State could "present to the jury the matters that were presented today under 404 2(c)."  (*Id*. at 407).

At the sentencing hearing, the prosecutor argued:

> It is of concern to the State that what you heard, our position is what you heard from the defendant today was not an acknowledgment that he had broken both statutory laws and moral laws. Apparently, he had to be told by new counsel that what he did was illegal. That's of concern. That is someone who, in their core, doesn't know that it's wrong to engage in sending masturbatory videos to a student, beginning at the age of 14.

(Doc. 22-3 at 399–400).  The prosecutor also argued:

> And I'm sure that the Court is aware of this, but I would be remiss if I didn't mention that the psychological definition of pedophile is different than the criminal one. Psychologically, because the victims were postpubescent, he's not a pedophile, but that's not our legal definition. Our legal definition is these victims were minors. He was in a custodial position. With [H.W.]

she was 14, 15, 16. And so criminally and in our society he is a pedophile.

Defense counsel argues that we need to deter and punish, and that's what I'm asking the Court to do. As far as help Daniel, Daniel needs to help himself, which he has not done, and to argue to the Court that he's learned his lesson because he hasn't gotten in any trouble in almost a year in the jail, well, his thing is minor girls. He's not having access to minor girls. It took several contempt orders and solitary confinement to stop him from accessing the minor girls.

(*Id*. at 422).

In sentencing Petitioner, the trial court stated as follows:

[B]ut the reality of an additional case involving an additional student, who is substantially younger than [M.W.] at 14, 15 and on years of age, involving the [Hilliard] victim, and what must be considered by the Court because now there is no longer an isolated occurrence, but now there is a pattern that persists. It is a pattern born of utter depravity.

(*Id*. at 433).

Further, at the plea hearing, the State provided a factual basis for the plea:

As to case 2014-CF-558, the State would be prepared to prove at trial beyond a reasonable doubt as to counts one through three that between August 18th, 2011, and August 17th of 2013 in Nassau County, Florida, that the defendant did knowingly transmit videos of himself masturbating to the Hilliard victim [H.W.] who is known to him to be a minor. She was his student or former student. Further, as to counts four through thirty four, between the dates of October 1st, 2012 and June 16th 2014, in Nassau County, Florida, that the defendant did knowingly possess photos and videos he knew included sexual conduct by the child who we've alleged as Hilliard victim and possessed ten or more images of child pornography, one or more of which was a movie involving child pornography.

(Doc. 22-2 at 288).  Petitioner did not object to the factual basis.  (*Id*.).  Thus, Petitioner admitted that between August 18, 2011, and August 17, 2013, he knowingly transmitted videos to H.W. of him masturbating and that between October 1, 2012, through June 16, 2014, he possessed videos containing sexual content involving H.W.

In denying this claim, the trial court found:

These facts demonstrate that the remarks Defendant now takes issue with are, at least principally, fair comments on the record evidence. Moreover, to whatever extent the comments interjected some ambiguity into [H.W.'s] exact age at the precise time Defendant sent her videos of Defendant masturbating, there is no question that [H.W.] was a minor at the time Defendant sent the videos. Likewise, there is no question that Defendant began frequently communicating with [H.W.] outside of school hours when she was fourteen years of age and that Defendant expressed his love for [H.W.] at that same time. Defendant solicited a picture of [H.W.] in her undergarments at the time [H.W.] was fifteen-years-old. Finally, there is no question that Defendant sexually battered a second underage student-victim, [M.W.] (Ex. A; Ex. D at 55; Ex. F at 20.) Defendant wants this Court to believe that the prosecution remarks at issue poisoned his sentencing hearing. However, the undisputed facts set forth above demonstrate that the prosecution comments could not have prejudiced Defendant. Additionally, the same Judge presided over Defendant's case throughout all of its critical stages, and was therefore well acquainted with the relevant timeline of Defendant's conduct prior to sentencing Defendant.

(Doc. 22-3 at 98–99).

Petitioner has failed to demonstrate that his counsel acted deficiently or that he sustained prejudice. The Court addresses the claim under the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts given the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). Claim One will be denied.

### B.   Claim Two

Petitioner argues that the "prosecutor knowingly presented false testimony on a material fact to the state trial court during the sentencing hearing." (Doc. 1 at 20). He asserts that

the claim that Petitioner Wright sent videos of himself masturbating to H.W. when she was fourteen years old and a student in his class, as well as the date-range of H.W. sending photographs/videos to Petitioner Wright, was

known to be false by the prosecutor--the same individual that conducted both the *Williams* rule hearing and the sentencing hearing. Although the prosecutor asserted at the *Williams* rule hearing that Petitioner Wright texted with H.W. starting in the eighth grade, the prosecutor admitted that she merely had logs of the dates that the text messages were sent between Petitioner Wright and H.W. during that time period--and that she had no idea what the subject matter of those text messages were or whether any photographs of any sort were ever exchanged (other than the photographs and videos from 2012-2013 that Petitioner Wright had been charged with). (R-68). There is no evidence that H.W. was involved in any sexually inappropriate exchange while Petitioner Wright was still H.W.'s teacher, particularly in light of Petitioner Wright's unrebutted testimony that lots of his students had his cell phone number because of the need to contact him to check out equipment from his computer science classroom and in his coaching responsibilities. (R-68). Thus, the prosecutor knowingly misrepresented the facts to the state sentencing court, contrary to the high ethical calling of a state prosecutor.

(*Id*. at 21).  Petitioner seeks relief under *Giglio v. United States*, 405 U.S. 150 (1972).

This claim was raised in Petitioner's Rule 3.850 motion.  The trial court denied the claim finding that it was procedurally barred and that the prosecutor's remarks were "fair comments on the record evidence."  (Doc. 22-3 at 99).

Claim Two is "procedurally barred because it should have been raised on direct appeal where the facts supporting the claim were available."  *See Allen v. State*, 261 So. 3d 1255, 1286 (Fla. 2019).  However, some courts have cautioned against summarily precluding a *Giglio* claim, even though it could have been raised at an earlier time.  *See Johnson v. State*, 128 So. 3d 155, 156–57 (Fla. 2d DCA 2013).

The Court concludes that Petitioner's *Giglio* claim is procedurally barred and otherwise without merit.  Petitioner was required, under Florida law, to raise this issue with the trial court.  *See Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982).  Petitioner did not, and therefore this claim is procedurally barred under Florida law.  Because Petitioner has failed to assert the requisite cause and prejudice or fundamental

miscarriage of justice required to overcome the default, this claim is precluded from habeas review.

Moreover, even were the claim properly before this Court, it lacks merit under § 2254(d). To establish a *Giglio* violation, the petitioner must show that "(1) a witness presented false testimony; (2) the prosecutor knew the testimony was false; and (3) the statement was material." *Hearns v. Sec'y, Dep't of Corr.*, No. 8:21-CV-163-SDM-TGW, 2024 WL 1216366, at *8 (M.D. Fla. Mar. 21, 2024). The trial court determined this claim lacked merit:

> These facts demonstrate that the remarks Defendant now takes issue with are, at least principally, fair comments on the record evidence. Moreover, to whatever extent the comments interjected some ambiguity into [H.W.'s] exact age at the precise time Defendant sent her videos of Defendant masturbating, there is no question that [H.W.] was a minor at the time Defendant sent the videos. Likewise, there is no question that Defendant began frequently communicating with [H.W.] outside of school hours when she was fourteen years of age and that Defendant expressed his love for [H.W.] at that same time. Defendant solicited a picture of [H.W.] in her undergarments at the time [H.W.] was fifteen-years-old. Finally, there is no question that Defendant sexually battered a second underage student-victim, [M.W.] (Ex. A; Ex. D at 55; Ex. F at 20.) Defendant wants this Court to believe that the prosecution remarks at issue poisoned his sentencing hearing. However, the undisputed facts set forth above demonstrate that the prosecution comments could not have prejudiced Defendant. Additionally, the same Judge presided over Defendant's case throughout all of its critical stages, and was therefore well acquainted with the relevant timeline of Defendant's conduct prior to sentencing Defendant.

(Doc. 22-3 at 98–99).

The Court agrees that Petitioner has failed to establish a *Giglio* violation. The Court addresses the claim under the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of *Giglio*, and was not based on an unreasonable determination of the facts

given the evidence presented to the state court.  *See* 28 U.S.C. § 2254(d).  Claim Two will be denied.

### C.    Claim Three

Petitioner alleges that the trial court "erred in refusing to consider mitigation during the sentencing hearing. Alternatively, defense counsel rendered ineffective assistance of counsel by failing to challenge the state trial court's perception that it could not consider the mitigation presented during the sentencing hearing due to the below-guidelines plea range." (Doc. 1 at 24).  According to Petitioner, it violated his "constitutional rights for the state trial court to refuse to consider mitigation during his sentencing hearing," and, had counsel objected, "there is a reasonable probability that the argument would have prompted the state trial court to change course, fully consider mitigation, and to sentence Petitioner Wright to something less than the absolute maximum sentence that it chose." (*Id*. at 28).

The Court will first address Petitioner's claim that the trial court erred in refusing to consider mitigation during the sentencing hearing.  The Plea of Guilty and Negotiated Sentence provided that Petitioner's sentence would be "a range of ten--twenty years DOC. A hearing date will be set at which time mitigation evidence may be presented," which was a downward departure from the sentencing guidelines.  (Doc. 22-2 at 593). Petitioner received a sentence of twenty years.

At sentencing, the trial court addressed the evidence supporting mitigation:

And then I have to consider the mitigating factors, argued well by counsel. The mitigating factors of one of the students being a willing participant. Her preference of no further punishment, that you've suffered enough, that this was not something that was inflicted on her against her will, as it's been properly referenced in prior testimony, all of that was certainly considered, and the reports from the psychiatrist and psychologists, rather, and Dr.

Neidigh and Dr. Drew and the supplements thereto and the polygraph examination, all of those have been looked at and considered by the Court.

(Doc. 22-3 at 433–34).  The trial court also indicated that it had reviewed the PSI, witness testimony, and letters supporting Petitioner in rendering its decision.

Petitioner relies on the following statement from the trial court: "To what extent are those mitigating factors that you--that was argued already reflected in the plea agreement . . . . And the Court must conclude on the facts and the evidence in this case that the mitigation offered by counsel has been factored in full in the plea agreement . . . ." (*Id*. at 435–36).

However, the trial court clarified that it had considered the mitigating factors.  For example, the trial court stated it had considered "the mitigating factors, argued well by counsel"; that "all [of the mitigating factors] have been looked at and considered by the Court"; and that it had "consider[ed] and balance[ed] the mitigation."  (*Id*. at 433–35). Ultimately, after weighing the mitigating evidence and given the circumstances, the trial court determined that the maximum sentence within the plea agreement range was appropriate.

The state court's rejection of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  This claim will be denied.

Likewise, the Court rejects Petitioner's claim that counsel was ineffective for failing "to challenge the state trial court's perception that it could not consider the mitigation presented during the sentencing hearing due to the below-guidelines plea range."  (Doc. 1 at 24).  This claim was raised in Petitioner's Rule 3.850 motion and was denied because

"the sentencing court did not ignore Defendant's mitigation evidence as Defendant alleges . . . ."  (Doc. 22-3 at 101).

As discussed above, the trial court considered the mitigation evidence offered by Petitioner.  The trial court in denying this claim concluded:

> Contrary to what Defendant argues in the instant motion, the sentencing court did not refuse to consider Defendant's offered mitigation evidence. The record cited above demonstrates that the sentencing court received and considered all the mitigation evidence Defendant presented. In weighing the mitigation evidence against Defendant's offenses, the sentencing court simply concluded that the mitigation evidence did not warrant a sentence at the lower end of Defendant's negotiated range.

(Doc. 22-3 at 100).  Petitioner has failed to demonstrate that counsel acted deficiently or that he sustained prejudice.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.  Upon thorough review of the record and the applicable law, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts given the evidence presented to the state court.  *See* 28 U.S.C. § 2254(d).  Claim Three is denied.

### D.   Claim Four

Petitioner argues counsel rendered ineffective assistance "by not presenting expert testimony to challenge the *Williams* rule evidence relating to victim H.W., otherwise Petitioner Wright would not have entered this plea bargain range with the State and/or would have received a lesser sentence."  (Doc. 1 at 33).  This claim was raised in Petitioner's Rule 3.850 motion and was denied because the "record demonstrates that failing to produce a digital forensics expert did not render counsel's performance deficient

in this case" and because there was no showing of prejudice.  (Doc. 22-3 at 103).

On February 18, 2015, Petitioner's counsel filed a Motion to Allow An Expert to Examine Evidence in the Possession of the State.[5]  (Doc. 22-1 at 157–58).  The motion alleged that the State had indicated its intention to introduce evidence allegedly obtained from one or more cellphones belonging to Petitioner and that the expert would conduct non-destructive testing on the evidence.  On April 21, 2015, Petitioner's counsel filed a Motion for Additional Discovery requesting the source or origin of each file, the method by which the file was obtained or downloaded, whether the particular file existed on more than one location (*i.e.*, more than one cell phone, computer, hard drive, *etc.*), and the date the file was obtained by the State.  (*Id*. at 193–94).  According to Petitioner, "the defense expert never conducted a full review of the State's digital evidence in this case, due to defense counsel's failure to follow through and arrange for that examination to take place, despite counsel's recognition of the importance of doing so—as evidenced by the above-referenced motions."  (Doc. 1 at 37).

"[W]hether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review."  *Mills v. Poole*, No. 06-CV-00842A, 2008 WL 2699394, at *26 (W.D.N.Y. June 30, 2008).  Moreover, "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  *Smith v. Sec'y, Dep't of Corr.*, No. 8:18-CV-2597-CEH-AAS, 2022 WL 833681, at *15 (M.D. Fla. Mar. 21, 2022).  Mere speculation that the expert would have been helpful is insufficient to meet Petitioner's burden of proof.  *See Streeter*

---

[5] The *Williams* rule hearing was held on July 8, 2015.

*v. United State*s, 335 F. App'x 859, 864 (11th Cir. 2009) ("[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof.").

Petitioner also fails to establish prejudice.  As found by the trial court:

Furthermore, Defendant's motion does not contend that the photographs and videos at issue were illegally obtained or altered. Thus, it is unclear to this Court what material benefit a hypothetical digital forensics expert could have provided to Defendant when there is no question that Defendant committed the acts alleged in the State's charging information. Indeed, the speculative language Defendant employs in his motion demonstrates this very point. See Mot. at 38 ("Had said examination been conducted, the expert could have provided definitive testimony on numerous critical questions for the defense. . . . Further, the expert could have confirmed that numerous innocent videos and photos existed on Mr. Wright's phone stretching back well before any of the pornographic images, thus corroborating the defense position that no pornographic images had ever been sent/received between Mr. Wright and [H.W.] prior to Mr. Wright moving to Fernandina Beach and [H.W.] turning age 17.") (emphasis added); Mot. at 19 ("This exculpatory and mitigating information could have been used by defense counsel to have argued for a lesser sentence . . . .") (emphasis added). Postconviction relief cannot be based on such speculation. Maharaj v. State, 778 So. 2d 944, 951 (Fla. 2000). No hypothetical expert witness would be able to offset the central, uncontroverted facts of this case: Defendant sent videos of himself masturbating to [H.W.] while [H.W.] was a minor, Defendant received and saved numerous pictures and videos of [H.W.] engaging in sexual acts while [H.W.] was a minor, Defendant engaged in various sexual acts with [M.W.] while [M.W.] was a minor, and Defendant repeatedly attempted to contact the victims despite court orders to the contrary. (Ex. D; Ex. E; Ex. F; Ex. G; Ex. H.)

On these facts, it strains credulity to suggest that Defendant could have received an even slightly shorter sentence if only defense counsel would have produced a digital forensics expert at the Williams rule hearing. Furthermore, Defendant's argument that he would have rejected the State's plea offer is incredible on its face. As shown above, Defendant faced a sentencing exposure of 58.29 years to life in these cases. (Ex. F at 6; Ex. I.) Defendant specifically acknowledged this fact when he entered his plea. (Ex. F at 8-9.) Indeed, Defendant's attorney acknowledged on the record how dire Defendant's prospects were if he took his cases to trial. (Ex. D at 85-87.) Defendant's negotiated plea enabled him to lock in a sentencing range of ten to twenty years in prison, far below what he would have faced

at trial. (Ex. A; Ex. I.) Defendant expressly acknowledged this fact when he entered his plea. (Ex. F at 9-10.) Defendant received a sentence that comported with his sentencing agreement. (Ex. B.) The record demonstrates that failing to produce a digital forensics expert did not render counsel's performance deficient in this case. Furthermore, the record shows that, even if failing to produce such an expert had qualified as deficient performance, no prejudice could have resulted because Defendant would not have either received a lesser sentence or rejected the State's plea offer and taken his case to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Accordingly, this Court denies Ground Four of Defendant's motion.

(Doc. 22-3 at 102–03).

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts given the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). Claim Four is denied.

## E.    Claim Five

Petitioner alleges that "all of the errors committed by counsel in Petitioner Wright's case, considered either individually or together, resulted in Petitioner Wright being denied a fair proceeding." (Doc. 1 at 39).

Petitioner has not shown any of his trial counsel's alleged errors, considered alone, rose to the level of a federal constitutional violation or deprived him of effective assistance. As such, there are no errors to accumulate and Petitioner was not denied effective assistance of counsel nor has he demonstrated a federal constitutional violation. *See Walls v. McNeil*, No. 3:06-cv-237, 2009 WL 3187066, at *30–*31 (N.D. Fla. Sept. 30, 2009) ("As previously discussed, none of the alleged errors of trial counsel, considered alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there

are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair.").  Claim Five is denied.

F.      **Claim Six**

Petitioner alleges that "[m]ultiple conditions of [his] probation are illegal as bearing no relationship to the crimes for which [he] was convicted." (Doc. 1 at 39).  Petitioner mentions these conditions: "mandatory curfew from 11:00 p.m. to 7:00 a.m. daily; maintain a driving log; must not access the internet or other computer services or social media; and must not consume alcohol and must attend two AA meetings a week." (*Id*. at 40).  This claim was raised in Petitioner's Rule 3.800 and Rule 3.850 motions and was denied.

Questions "of state law rarely raise issues of federal constitutional significance, because [a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  *Stark v. Jones*, No. 1:16CV57/MMP/EMT, 2016 WL 7168409, at *2 (N.D. Fla. Nov. 8, 2016) (quotation and citations omitted).  Petitioner's "challenge to the terms and conditions of his probation is purely a state law issue, not a federal issue for which federal habeas relief may be granted under § 2254." *Id*.

Since Petitioner's challenge to the trial court's imposition of certain terms and conditions of his probation does not raise an issue of federal constitutional significance, Petitioner is not entitled to federal habeas relief on the claim asserted in his amended §

2254 petition." *Id*. at *3.  Claim Six will be denied.[6]

## IV.   CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).  When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*; *Lamarca*, 568 F.3d at 934.  However, a prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

---

[6] Further, Petitioner has failed to demonstrate that the state court's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law, and therefore Claim Six will also be denied under § 2254(d).

V.    CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**, and this case is

   **DISMISSED with prejudice**.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to enter judgment accordingly and close

   this case.

**DONE** and **ORDERED** in Jacksonville, Florida on June 27, 2024.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record